(Hamilton Co., O., Common Pleas.)

THE BOARD OF EDUCATION OF THE SCHOOL DISTRICT OF CINCINNATI v. EDWIN O. ESHELBY.

---

(1). When a city treasurer, who is by law the custodian of school funds, deposits them in a bank in a manner not authorized by law, he has broken the contract of his bond to faithfully perform the duties of his office.

(2). As the profits arising from public funds deposited by such treasurer in the method provided by law, inures to the benefit of the city, the interest received by him from such funds illegally deposited is the measure of his liability upon his bond.

(3). Such treasurer is not a trustee, or an agent, or a bailee, in the ordinary sense, but, for the particular functions of his office is invested by the government with a part of its sovereignty, so that when he deposits public money at interest in a bank, it is the same as if the department of the government he represents had made the deficit itself.

(4). The interest of such fund does not, under any circumstances, belong to the treasurer individually; but it is the property of the department of the government to which the fund belongs.

(5). It is against public policy for such treasurer to deposit the public money which comes into his hands by virtue of his office, in a bank and appropriate the interest accruing from it to his own use.

---

HOLLISTER, J.

The defendant entered upon the office of city treasurer of Cincinnati, on July 5, 1897. As such treasurer he was ex-officio treasurer of the school funds of the school district of Cincinnati. Between July 5, 1897, and July 1, 1898, he received, held and disbursed money of the school district of Cincinnati. As the funds came into his hands he deposited them to the credit of E. O. Eshelby, Treasurer, in the Atlas National Bank, a corporation of the United States doing business in Cincinnati. From time to time within the period named he was paid by the bank upon the average balances of the deposit, interest amounting to the sum of $2051.62.

The ownership of this money is the question in controversy, the plaintiff and defendant each laying claim to it.

Before entering upon his duties the defendant executed a bond as required by section 4043, of the Revised Statutes, payable to the state of Ohio, the condition of which was.

"If the said Edwin O. Eshelby shall faithfully perform all and singular his duties as said treasurer of the school fund of the district of Cincinnati and shall faithfully keep, disburse and account for, according to law, all moneys that shall come, from time to time, into his hands as such treasurer,' and at the expiration of his term of office shall pay over to the proper person or authority all such money remaining in his hands, then this obligation shall be void and of no effect."

The defendant seeks to justify his position by claiming that his sole responsibility touching the school funds, which come into his hands through the channels provided by law, arises by virtue of the contract he has made with the state of Ohio, as contained in the terms of his bond. He says that he is not the agent of the city, its trustee or bailee for hire whose responsibility with reference to the money or others in their custody is to be measured by the degree of care they have exercised in its safe keeping, and who are not permitted by the law to retain as their own interest upon money in their possession by virtue of their trust or agency. He would be held only as it is nominated in the bond. His point is that when he has disbursed as required by law the moneys which have come into his hands by operation of law, he has discharged his full duty and that, as their

is no law to cover a case in which interest on public moneys is made in the way that he has made it, the interest can belong to no one but himself.

Whatever diversity of opinion there may be of the nature of the responsibility of such public officers as a city treasurer is, yet the supreme court has held that the liability of a county treasurer is upon contract, a positive obligation as against the liability of a bailee raised by operation of law in the absence of positive engagement:

"By accepting the office a treasurer assumes upon himself the duty of receiving and safely keeping the public money and of paying it out according to law. His bond is a contract that he will not fail upon any account to do these acts. It is, in effect, an insurance against the delinquency of himself and against the fault and wrongs of others in regard to the trust placed in his hands." (The State v. Harper, 6 Ohio St., 608.)

To the exact point are also: Muzzy v. Shattuck, 1 Denio, 233; United States v. Prescott, 3 How, 578; Commonwealth v. Comley, 3 Pa. St., 372; Comomnwealth v. Baily, 129 Pa. St., 480; Linville v. Leininger, 72 Ind., 491; McClelland v. The State, 138 Ind., 321; Inhabitants of New Providence v. McEuchron, 33 N. J. L., 339; Township v. Gorden, 37 Ia., 550.

If it be true, as claimed by the defendant, that the obligation of such a treasurer is upon the contract of his bond only, and there is no statute which covers moneys of the kind in dispute which come into the treasurer's hands, and as it is true that such treasurer is not a trustee or agent in the ordinary sense, responsible to his principal or beneficiary for all profits accruing to the fund in his hands as agent or trustee, the defendant's position has at least the merit of great plausibility; and upon it learned counsel may, as they do, make a most forcible argument. Indeed, in the absence of a positive statute providing for interest raised from funds deposited in the way the defendant deposited the school funds, the logic of the situation based upon these premises seems to require the

conclusion that when he has paid out the moneys actually paid into his hand, by the proper officers, collected by them through the various means provided by law, to be credited by law to the school fund, he has done his whole duty under his contract.

The force of this position is so strong that the supreme court of Indiana were constrained to hold in a similar case that the public funds in the hands of a county treasurer were his own. The language of the court is so pertinent that it may with propriety, be quoted at length:

"It is probably the correct rule, that when an officer has complied with the terms of his official bond, by keeping the moneys safely during his first term of office, and by paying it out when legally required during his term, or accounting for and paying the same over to the proper person or authority at the expiration of his term, he has done all that the law and the terms of his bond require of him. He is not, like a trustee or an agent, a mere bailee or custodian of the money in his hands. The money which he receives becomes his own money."

Accordingly it was decided that the interest on public moneys deposited by him in a bank belonged to him, and not to the county of which he was treasurer (Shelton v. State, 53 Ind., 331).

The same court, in Linville v. Leininger, supra, say:

"The legal, technical title to the money which comes into the hands of a public officer, for which bond is given, is in himself."

And although the court held, afterwards, that such title is legal only in a technical and limited sense, and that upon the death of a township trustee, if the money in his hands, which really belonged to the county, could be identified, it should be delivered over to his successor, or if not, the amount should be allowed against his estate, yet the court did not doubt the correctness of its former decision.

(Rowley, Adm'r., v. Fair, 104 Ind., 189).

But, assuming the conclusion to be

correct that the treasurer's only obligation lies in contract, yet the bond requires that he "shall faithfully perform all and singular his duties as said treasurer of the school fund and shall faithfully keep, disburse and account for, according to law, all moneys that shall come, from time to time, into his hands as such treasurer."

The contract, therefore, must be construed in the light of all of the laws in existence at the time reflecting in any way upon the duties of the treasurer with reference to the public moneys which come into his hands.

The treasurer of Cincinnati is the custodian of the school funds by virtue of his office, section 4042, and "treasurers of city districts shall not be allowed compensation for disbursing the school funds," sec. 4056. "His salary is compensation for performing all the duties of his office." Judge Force in Knorr v. Board of Education, 9 Bull. 182.

The law establishing the office of treasurer, in operation at the time the defendant was elected, is a part of what is known as the New Charter of Cincinnati, and is found in section 1709a, Revised Statutes. This fixes the amount of the salary for each officer, including the treasurer, who shall receive $3500 annually, "which said several salaries shall be payable in monthly installments, and shall not be increased nor diminished during the term of office of any of said officers, and none of said officers shall receive any other or further compensation whatsoever. The compensation of all officers shall be by stated salary and all fees and perquisites authorized by law or ordinance shall be paid into the city treasury, and unless otherwise provided shall be credited to the general fund."

It would seem, therefore, that under no circumstances can the treasurer receive greater compensation for all of his services, including the handling of the school fund, than his stated salary.

But by section 4047, R. S., it is provided that:

"No money shall be paid to the treasurer of a district other than that received from the county treasurer, except upon order of the clerk of the board, who shall report the amount of such miscellaneous receipts to the county auditor each year immediately preceding such treasurer' settlement with the auditor," etc.

It is very clear, from this section, if it stood alone, that the treasurer could have no sources of receipt of moneys excepting as therein indicated. It is, therefore, argued that the laws touching his duty and compensation should be construed only with reference to such money as the legislature clearly contemplated would come into his hands, and that if he became possessed of any other moneys not received in the way provided by law, those provisions did not apply.

There is force in this position; but it ignores a statute passed subsequently to section 4047.

"In cities of the first grade and first class the city treasurer, upon giving bond as required by law, and having no sufficient burglar and fireproof safe, may, by and with the consent of his bondsmen, deposit the funds and money of said city in such bank or banks as to him may seem best and safest for the interests of said city, but such deposit shall be so conditioned as to be subject at all times to the warrant and order of such treasurer as required by law to be drawn. That all profits arising from such deposit or deposits shall inure to the benefit of said city." Sec. 1773-1.

Whether the defendants had such safe, or obtained such consent, does not appear; if he had and did, he, of course, has no right to the interest in question, and there would be no occasion to pursue the inquiry further. It may be assumed, therefore, that he had no such safe, and made the deposit without the consent of his bondsmen.

With section 1773-1 should also be considered the embezzlement act, section 6841, R. S., which provides among other things that:

"Whoever, being charged with the * * * receipt, safe-keeping, transfer or disbursement of the public money * * * or any part thereof

belonging to the  *  *  *  board of education,  *  *  *  converts to his own use  *  *  *  or uses by way of investment in any kind of security, stock, loan, property, land or merchandise, or in any manner or form whatever, or loans, with or without interest to any company, corporation, association or individual, or, except as herein after provided, deposits with any company, corporation or individual any portion of the public money or any other funds, property, bonds, securities assets or effects of any kind received, controlled or held by him for safe-keeping or under his control for a specific purpose, transfer or disbursement, or in any way or manner, or for any other purpose, shall be deemed guilty of embezzlement of so much of the money or other property thus converted, used, invested, loaned, deposited or paid out  *  *  *  provided, however, nothing in this act shall be so construed as to make it unlawful for the treasurer of any township, municipal corporation, board of education or cemetery association, to deposit any portion of such public money with any person, firm, company or corporation organized and doing a banking business under the banking laws of the state of Ohio or the banking laws of the United States; provided, further, the deposit of any such funds in any such bank shall in no wise release any such treasurer from liability from any loss which may occur thereby."

Considering, for a moment, the statute last cited, the legislature has apparently sought to make a distinction between the deposit of public moneys and the loan of them. It may be lawful to deposit them with a bank, but a crime to loan them to a bank, with or without interest. The statute says nothing of depositing them at interest. Assuming that there is a difference between the loan of a lump sum and taking therefor a promissory note, or some evidence of indebtedness, and a deposit in the ordinary sense, opening an account, paying in moneys from time to time, and paying them out as occasion may require in the ordinary course of business, and, assuming, further, that the defendant's turning the public moneys over to the Atlas bank was a pure deposit and not a loan and further that the transaction could not be regarded as an investment by him of the public funds the usufruct of which was to accrue to himself, the result is that the city treasurer may, under section 1773-1, not having a burglar and fireproof safe, and with the consent of his bondsmen, deposit city funds in a bank and not be guilty of a crime if he pockets the interest it earns instead of turning it over to the city, to which, by the statute it belongs.

Upon these premises and assumptions, the defendant claims that if a treasurer makes the deposit in a bank, with such consent and not having such safe, and follows the law thereby in the manner of the deposit, the city gets the benefit of the interest; but if he does not have such consent and has such safe and makes the deposit disregarding the law which requires such preliminary to the deposit, there is no express statute to cover his act, and gives him the opportunity to claim that the interest thereon belongs to him. In other words, if he does his duty as prescribed by law in making his deposits, the city, and not he, reaps the advantage of interest earned; but if he disregards the law, the money goes to himself.

Section 1773-1 shows that the legislature had in contemplation the receipt of other moneys by the treasurer than those paid to him under the provisions of section 4057, and provided a way by which he might legally make deposit of them at interest. It necessarily follows that a deposit by him in any other way is illegal.

Construing all of these statutes together and giving them all effect, the conclusion must be that when the treasurer receives more compensation per annum than $3,500 per annum from whatsoever source, and when he has deposited public funds in a manner contrary to law, he has failed faithfully to perform his duty, and

has broken his contract as contained in his bond.

Through his illegal act he has in his possession money which, but for it, would go to the city. He has, therefore, become liable on his bond for the amount of money the loss of which he has caused by his illegal proceeding.

Possibly it would have been more technically correct to have brought the suit directly on the bond. But as the defendant has pleaded the bond, the identical questions of law are presented which would have arisen in such a case, and the court may proceed with propriety to judgment accordingly.

But this court is of opinion that the treasurer's duties do not rest in contract alone. Public office is no man's private property. It is, as has been well said, by an eminent citizen, a public trust. It is "an employment in behalf of the government in a station or public trust," say the supreme court in State v. Kennon, 7 Ohio St., 547, 556, and to the point are the definitions of an office adopted in State v. Wilson, 29 Ohio St., 347. Compensation is by no means an element necessary to it, State v. Kennon, supra, State v. Anderson, 45 Ohio St., 196. In it no man can operate for himself. Every act in its administration should have for its object the good of the public, whom the officer represents, and not his individual enrichment through the use of public funds.

In the discharge of the duties of the office the officer performs no individual function and has no individual right or power. He legally acts as an officer, or he does not act at all. For the time being he is part of the administration of the government, whose sovereignty he not only represents, but he is, for the certain functions entrusted to him, the sovereign itself. (McPherson v. Foster, 43 Iowa 48, 63.) He has no individual duty to perform. He has not the custody of individual funds. Every dollar that comes into his possession finds its lodgment there because it is public money. So that when he is handling public funds it is the same as if the department he represents of the government was itself doing so. But as individuals must receive and disburse public moneys, the state invests them with a portion of its sovereignty for that purpose, only requiring a bond to protect itself in case the individual should forget the nature of his position and operate toward and with the money as if it were his own. The bond is but an incident to the duties of the office; an insurance of their faithful discharge. But the duties are existent all the time, and would be the same even if no bond were required. The money which came into the defendant's hands never was his in any sense whatsoever. It was public money when he got it, and never lost the public impress upon it. When he deposited it in the bank it was the same, as if the school board itself had deposited its own money, and he was but the means by which it was done.

It may be difficult to find exact authority for this position, but any other seems to the court altogether irrational, and its force was tacitly recognized by the defendant when he deposited the school funds to his credit as "treasurer", and not as an individual.

Authority is not wanting, however, for the assertion that a public officer has delegated to him a portion of the sovereignty. State v. Kennon, 7 Ohio St., at page 569. Not to multiply authorities, citation is made from 19 Am. & Eng. Enc. of Law, in which, at page 582, will be found many cases sustaining this proposition.

But there is another reason which would preclude the defendant from successfully claiming the money as his own. The use by a public officer of public moneys in a manner unauthorized by law and for his own benefit is contrary to public policy. That expression, ranking with "due process of law," for difficulty of concise definition, has nevertheless been defined in this manner:

"That principle of the law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public

good, may be termed 'the policy of the law', or 'public policy,' in relation to the administration of the law." (Egerton v. Brownlow, 4 H. L. Cases, 1.)

It cannot be doubted that it is exceedingly dangerous for officers entrusted with public funds to use them in their own business, or loan them or invest them for their own benefit. Instances are but too numerous of public loss resulting from this very cause. It is not within the purposes for which such funds are raised that they be put to such use.

· While it is not decided here that the embezzlement act covers this case, yet that statute shows the policy of the law relative to public money, if, indeed, it needed such vigorous exemplification. And bonds afford most inadequate protection. The books are full of cases in which sureties have escaped by reason of some technicality, or because of the strictness with which the contracts of sureties are construed. Sureties, too, become insolvent, or die and their estates are divided and are frequently frittered away or only made to respond after most tedious and expensive litigation.

The mere statement of the proposition should be sufficient to establish it. But authority may be found in Ohio which, if not directly to the point, yet illustrates the principle. The case is stated in the syllabus:

"Pending a litigation between the board of directors of a township and a special school district therein, as to the custody and control of a fund in the township treasury, the board permitted the treasurer, by a verbal agreement, to use the funds in his business, on his agreeing to pay interest thereon; the object being to earn sufficient, by such use, to meet the interest with which the board would be charged in the event the pending action should be decided against it. When the treasurer's term expired, and for the same reason, the loan was renewed and a note with sureties taken for the amount then due, payable to the board, with interest, in ten months.'

It was held that the transaction was not only a violation of express statute, but that it was in contravention of public policy.

For how much greater reason is the act of the defendant open to this objection, when the only possible ground he can have to hold the interest is that he disregarded the law in obtaining it. It will not do to say that the loaning by a public officer of a public fund, at interest, is not contrary to public policy, because the statute expressly provides that it may be done. For, while it might be within the policy of the law to permit it to be done in the method provided by law, it is certainly contrary to its policy that private advantage should come to a public officer through disregard of the provisions of the law, particularly when he has contracted to discharge his duties according to law.

For all of these reasons the court is of opinion that the plaintiff should recover.

Judgment accordingly.

Ellis G. Kinkead, for the Board of Education.

Frederick Hertenstein, for the Defendant.