SHANNON *vs.* REYNOLDS *et al.*

Under the act of October 17, 1870, (acts 1870, p. 14,) the ordinary and the other commissioners of Douglas county, after purchasing land and selling off lots for the erection of a court-house and jail,

on June 2, 1875, entered into a contract for the erection of a court-house and furnishing materials therefor, agreeing to pay $5,800 for the materials and work, $1,000 of which was to be paid when the walls were completed, and the balance when the building was finished, and the builders were to receive twelve per cent. on all delayed payments. After the work was completed, on July 3, 1876, the ordinary ordered the treasurer of the board of commissioners to pay to the contractors the amount due them, with twelve per cent. interest from December 25, 1875. Various amounts were paid on the orders so issued, and some of them were transferred by assignment. Upon application by the holders for a settlement, and under the recommendation of the grand jury, a tax was levied and collected and went into the hands of the treasurer for the purpose of paying this and other debts. On May 15, 1886, the ordinary endorsed on each of the orders the amount found to be due, audited and allowed, and directed the treasurer to pay them out of the fund in his hands raised by taxation. The treasurer refused to make payment, and a *mandamus nisi* was issued against him:

*Held* that, unless the treasurer, who was the executive officer of the ordinary, could show that the order on him was fraudulent, or that a mistake existed as to the amount found to be due, he could not go behind the judgment of the ordinary, acting as county commissioner, directing the payment of the sum, and set up want of authority in the commissioners to agree to pay twelve per cent. on delayed payments, or that the debts were barred when audited. In the absence of any evidence of fraud or mistake as to the amount found due, the *mandamus* was properly made absolute.

April 14, 1887.

County Matters. Douglas County. Officers. Treasurer. *Mandamus.* Before Judge RICHARD H. CLARK. Douglas Superior Court. January Term, 1887.

Reported in the decision.

JOHN M. & JOHN V. EDGE; M. M. SMITH; P. H. BREWSTER, for plaintiff in error.

THOS. W. LATHAM, for defendants.

HALL, Justice.

A. Reynolds and H. V. Reynolds, in their individual right, and A. & H. V. Reynolds, as partners, became re-

lators in a petition for *mandamus* against Shannon, county treasurer of Douglas county, and called upon him to show cause why he should not pay over a certain indebtedness from the county of Douglas, which the relators claimed to be due them.

By the 3rd section of the act of the General Assembly, approved Oct. 17th, 1870, (acts 1870, p. 14,) which act authorized the laying off and organizing of Douglas county, the ordinary of the county, together with four other persons named therein, were made and constituted a board of commissioners for the county, and they were empowered, on the location of the county site, to purchase a lot of land at the county site, to lay off the same into town lots and sell them at public sale, and to apply the proceeds of the sale to the erection of a court-house and jail for the use of the county. After this land was purchased and the sale was made, the ordinary and his co-commissioners, on the 2d of June, 1875, entered into a contract with J. H. Wallace, J. W. Henderson and J. T. Dyson to erect a court-house and to furnish material for its erection, agreeing to pay them for the material and work the price of $5,800. According to the terms of this contract, the sum of $1,000 was to be paid when the walls were completed, and the balance when the building was finished. Another stipulation in the contract was, that the builders were to receive 12 per cent. upon all delayed payments. After the work was completed, on the 3d of July, 1876, the ordinary ordered the treasurer of the board of commissioners to pay the contractors the amount due for the building of the court-house, with 12 per cent. interest from 25th December, 1875. There were quite a number of these orders. Four of the orders came by regular assignment, either directly or through previous assignees, into the hands of the relators; and while in the hands of the original owners and their assignees, various sums were paid on them at different times. After allowing all of those payments, however, a balance of between $1,900 and

$2,000 was found to be still due on them, and upon the application of these parties for a settlement of their demand, the grand jury of the county recommended the assessment of a tax, which was levied by the ordinary and was collected and went into the hands of the treasurer for the purpose of paying this, among other debts of the county.

On the 15th of May, 1886, the ordinary of the county endorsed on each of these orders the amount found to be due, audited and allowed them, and directed the treasurer to pay the owners thereof, the then holders or their attorneys, the sum found to be due on each of them, out of the funds in his hands raised by taxation for the purpose of paying this indebtedness. The treasurer, admitting that he had those funds in hand, refused, upon a demand made upon him by the holders of these papers, to pay them. Thereupon, heir petition for *mandamus* was filed and an order *nisi* was directed to be issued. The respondent demurred to the petition on various grounds, and also answered the rule calling upon him to show cause why the *mandamus* should not be made absolute. The answer brought forth nothing new; it was a virtual repetition of the grounds of demurrer. He claimed that he could not safely pay the money until the questions made by his demurrer and answer were settled.

When the case was called for hearing, it was submitted to the decision of the presiding judge, without a jury, both upon questions of fact and law, including of course the questions that had been made by the demurrer. The judge, on hearing this cause shown, deemed it insufficient, and made the *mandamus* absolute.

There are quite a number of exceptions taken to this decision of the court, only two of which, however, were insisted upon in the argument before this court, viz: (1) that those commissioners had no right to enter into a contract with these parties for the payment of interest of 12 per cent. upon the conditions mentioned; and (2) that

when these debts were audited and directed to be paid in 1886, they were barred by the statute of limitations, and that the order of the ordinary, directing them to be paid, under the circumstances, was in violation of his duty, as he was not authorized by the law to waive the statute of limitations, or to revive, by a new promise, a debt of the county already barred.

In the view we take of this case, it is not necessary to decide either of these questions; though if it were, we would find little difficulty in overruling the exceptions taken to the decision. Unless this treasurer, who is the executive officer of the ordinary, could show that the order on him was fraudulent, or that a mistake existed as to the amount found to be due, he could not go behind the judgment of the ordinary, acting as county commissioner, directing the payment of this sum. There is no pretense of any fraud or mistake as to the amount found to be due. These parties seem to have been vigilant in prosecuting their rights; the county displayed an equally commendable desire to meet and satisfy its obligations. They raised the money in the method pointed out by law, for the purpose of satisfying these demands; and having raised it in that way and for that purpose, they directed their treasurer to pay it over for the satisfaction of these demands. We think this view entirely conclusive of this case, and must result in an affirmance of the judgment.

Judgment affirmed.