No. 16,536.

McClelland, Trustee, v. The State, ex rel. Speer.

Township Trustee.—*Insurer of Public Funds.—Deposit.—Failure of Bank.*—A township trustee is an insurer of the safety of the public funds in his charge, and is bound to account for money lost by the failure of a bank in which the funds are deposited, even though he be without fault.

Same.—*Statute.—Public and Private.—For Relief of Trustee.—Constitutional Law.*—An act of the Legislature providing for the reimburse-

McClelland, Trustee, *v.* The State, *ex rel.* Speer.

ment by a township of a trustee who lost public funds by the fail-
ure of a bank, and which is not declared to be a private statute, is,
under section 27, article 4 of the constitution, a public law.

SAME.— *Taxation.—Private Use.*—A public statute which is intended
to, and in effect does, so tax an individual as to take private prop-
erty for private use is not valid.

SAME.— *Taxation for Relief of Trustee.* — *Reimbursement of Fund by
Trustee.*—Where a township trustee makes up from his private
means school funds of the township lost by the failure of a bank in
which they were deposited, he has no legal right to a return of the
money so paid by him, and a statute for his relief directing his suc-
cessor in the trust to repay such money, to do which it is necessary
to levy a tax upon the people of the township, is unconstitutional.

SAME.—*State School Funds.* —*Loss by Bank Failure.* —*Taxpayers of
Township not Liable.*—Where State school funds, coming into the
hands of a township trustee for common school purposes, and not
raised by taxation upon the township, are lost by the failure of a
bank in which the trustee has deposited them, the Legislature has
no power to impose upon the taxpayers of such township the bur-
den of making good the loss.

SAME.—*Act to Relieve from Judgment.—Impairment of Obligation of Con-
tract.—Relief of Public Officer.*—A legislative act seeking to release
a township trustee and his bondsmen from liability on a judgment
rendered against them on account of public funds lost in a failing
bank, is void under section 24 of the Bill of Rights, as impairing the
obligation of a contract, and for the additional reason that the Leg-
islature has no power to reimburse a public officer for money lost
by him in his official capacity.

From the Marion Superior Court.

*W. N. Harding* and *A. R. Hovey*, for appellant.
*F. J. Van Vorhis* and *W. W. Spencer*, for appellee.

DAILEY, J.—William H. Speer was trustee of Wayne
township, in Marion county, Indiana, and of Wayne
school township, in said county and State, from April,
1882, to April, 1884.   Prior to August 10, 1883, he had
deposited in the bank of the Indiana Banking Company,
a bank of discount and deposit of the city of Indianapo-
lis, Indiana, to his personal credit and in his individual
name funds belonging to said civil and school township,
to the amount of $5,278.75, of which amount $2,701.04

belonged to the school funds denominated in section 4,325 of the R. S. of 1881 as the "common school fund," interest on the "Congressional township school fund," and the "school revenue for tuitions," and $1,328.14 thereof belonged to the special school fund, all of which had come into the hands of said Speer as trustee of said Wayne school township for use in maintaining the common schools of said school township under the laws of the State of Indiana.    On said 10th day of August, 1883, said bank suspended payment, and a receiver was appointed therefor, and said Speer lost the deposit.    After the loss of the funds, said Speer, out of his private means, repaid himself as the trustee of said school township, all said sum of $2,701.04 belonging to said school fund, and also repaid to himself as such trustee $111.86, as part payment of said "special school fund," amounting in the aggregate to $2,812.90.    Firman Stout was elected as successor in office to said Speer, and continued in office until April, 1888, when he was succeeded by John F. McClelland.    On June 23, 1884, there was still due from Speer to said township, on other than school funds, the sum of $2.286.05, for which sum Stout, as trustee of said township, on that day recovered judgment against Speer and the sureties on his official bond in the superior court of Marion county, Indiana, $1,064.18 of which sum has since been collected and paid on said judgment through the receiver of the Indiana Banking Company. On April 8, 1885 (Acts 1885, p. 157), an act for the relief of said William H. Speer and the sureties on his official bond became a law (if constitutional) without the Governor's signature, by which act it was provided as follows:

Section 3, p. 159.    "The trustee of Wayne township in Marion county, Indiana, is directed to pay to William H. Speer, late trustee of said township, twenty-eight hundred and twelve dollars and ninety cents ($2,812.90) out of the

township fund, being the amount paid into the several funds of said township by said William H. Speer on account of the loss by the failure of said Indiana Banking Company, in excess of one-half of ten hundred and thirty-two dollars and nine cents, dividend received from the receiver of said bank: Provided, he shall transfer to the trustee of said township all claims he may hold against said bank for money belonging to the township deposited therein."

Section 4, p. 160. "The said William H. Speer, and his sureties, Robert N. Harding and Israel J. Connorroe, are hereby released from all liability on account of judgment rendered in cause 32,370 of Marion Superior Court against the said Speer and his sureties in favor of the State of Indiana, on the relation of Firman Stout, trustee of Wayne township, and said trustee is directed to enter satisfaction thereof upon the record."

Section 5 declares an emergency.

Upon the passage of said act said Speer transferred to said Stout, who was then trustee of the township, all claims held by him against the bank for money belonging to the township deposited therein, and demanded of Stout, as such trustee, payment of said sum of $2,812.90, or, if he did not have sufficient township funds on hand to make such payment, that he levy a tax sufficient to pay that amount. This the trustee refused to do, and, upon the election of said McClelland as successor in office of said Stout, Speer renewed the demand upon McClelland, as trustee, and, not receiving payment, brought this suit in the superior court of Marion county to procure a mandate against the appellant, requiring him to forthwith make such payment, or if there were not sufficient funds on hand for that purpose, to levy a tax sufficient therefor.

All these facts are fully set out in the appellee's com-

plaint, and also in the alternative writ of mandate, together with the specific statement that at the time the relator was elected trustee the funds of the township and school township were deposited in the Indiana Banking Company of Indianapolis, Indiana, a bank in good standing and generally regarded as solvent; that such funds remained deposited at said place, and such other funds of said township as came into his hands; that the relator had no knowledge of any kind that led him to believe or suspect that the money deposited in the bank was not secure; that prior to the 10th day of August, 1883, he had deposited the funds of said civil and school township to the amount of $5,278.83; that said funds remained in said bank on said date and were lost by the failure of the bank without any fault or negligence on the part of the relator. On this complaint and affidavit the court made an order directing the alternative writ of mandate to issue, and the same was issued. To this writ a demurrer was filed, which demurrer was overruled. Thereupon a return was made to the alternative writ of mandate in four paragraphs, the first of which was afterwards withdrawn.

The remaining paragraphs of the answer allege, substantially, "that the money that came into the hands of the relator was for the purpose of maintaining schools in the township; that the relator repaid himself the sum of $2,701.04, belonging to the tuition fund, and $111.86 belonging to the special school fund, out of his own private means; that these two items are the same money which the relator repaid himself; that the defendant only has on hands a small amount of money, not over $50; that he expects to draw from the county treasury the sum of $525, or about that amount; that said amount, together, will barely pay the current expenses of the township during the current fiscal year, and until the

next levy of taxes for township purposes can be made and collected, and that to pay out the money on hands and to come into his hands, as aforesaid, will leave him destitute of means to carry on the necessary business of the township. And in the last paragraph it is alleged that the funds so repaid by said relator to himself as such trustee were special funds raised under said law for maintaining the common schools of the State; that they were not originally raised by direct taxation in said school township or elsewhere, and that the property in said Wayne township can not be taxed for the purpose of repaying said relator for funds paid by him into said 'common school fund,' 'interest on Congressional township school fund,' and 'school revenue for tuition fund.' ''

The relator filed his separate demurrers to the second, third and fourth paragraphs of the return. The demurrers to each paragraph of the return to the alternative writ were sustained, to which the appellant excepted. The appellant refused to amend said paragraphs of answer, or to further answer said complaint, and elected to abide the rulings of the court on the demurrers to the several paragraphs of the answer as herein above stated; whereupon judgment was entered and the writ of mandate issued against said McClelland, trustee as aforesaid, to which judgment the appellant excepted. This judgment was against John F. McClelland, trustee of Wayne township, and no judgment whatever was entered against the trustee of Wayne school township. Such school trustee, therefore, has no interest in this appeal, but appears hereto for the purpose of saving any question as to the parties. The appellant filed a motion for a new trial, which was overruled, and he appealed from the special to the general term of the superior court. No assignment of error is made upon the motion for a new trial. The assignments of errors on appeal by the township

trustee, from the special to the general term of the superior court were as follows:

1. The complaint does not state facts sufficient to constitute a cause of action.

2. The court erred in overruling the demurrer to the complaint herein.

3. The court erred in sustaining the demurrer to the second paragraph of the defendant's return to the writ of mandate herein.

4. The court erred in sustaining the demurrer to the third paragraph of the defendant's return to the writ of mandate herein.

5. The court erred in sustaining the demurrer to the fourth paragraph of the defendant's return to the writ of mandate herein.

The appellant's assignment of error in this court is that "the court in general term erred in affirming the judgment of the court in special term."

The first and second assignments of error involve the constitutionality of the act for the relief of William H. Speer, of April 8th, 1885 (Acts 1885, p. 157, *supra*), and the power of the Legislature to indirectly impose taxation upon a township for such purpose. Counsel for the appellant say: "The relator had no claim whatever, legal or equitable, against Wayne township. He had been trustee of the township, and as such had given bond with approved security. As such trustee it was his duty 'to receive all money belonging to the township, and pay the same out according to law, as right and justice shall require,' and 'to see to a proper application of all moneys belonging to the township for road, school or other purposes' (section 5993, R. S. 1881); that 'it is also provided by section 4438 that the trustee of the township shall, for his township, be the school trustee and perform the duties of clerk and treasurer for school pur-

poses.' The preamble of the act of the Legislature of 1885, *supra*, recites that "William H. Speer, late trustee of Wayne township in said county, did, while acting as such trustee, deposit in said bank fifty-two hundred and seventy-eight dollars and seventy-five cents ($5,278.75) belonging to said township," and "that on the 10th day of August, 1883, said Indiana Banking Company * * * failed and suspended payment."

It is well settled in this State that the failure of the bank did not excuse the trustee from making good the loss. He was bound, as a public officer, to keep the funds in his hands safely. He was an insurer of the safety of the funds, and he was bound to account for the money lost by him, although lost without his fault. The amount of money he received measured his liability. *Rock* v. *Stinger*, 36 Ind. 346; *Inglis* v. *State, ex rel.*, 61 Ind. 212; *Linville* v. *Leininger, Tr.*, 72 Ind. 491; *Bocard* v. *State, ex rel.*, 79 Ind. 270.

The answer in the case of *Inglis* v. *State, ex rel.*, *supra*, disclosed the fact that the money had been deposited by the trustee in the First National Bank of Madison, Indiana, on the advice of the State Superintendent of Public Instruction, the school examiner and the board of commissioners of the county. The bank failed and suspended payment, and this court held that "the trustee was liable for the money to the township, although he may have made the deposit in good faith, acting with ordinary prudence, and although he may have lost the money by the insolvency of the bank, without any negligence or want of care on his part. He was not a mere bailee of the money; but he became bound by his bond to the township for it, whatever casualty might have happened to him, whereby he lost it." Such was the status of the appellee's relator at the time of the enactment of April 8th, 1885, *supra*.

McClelland, Trustee, v. The State, ex rel. Speer.

Appellant's counsel concede that it is not a valid objection to the exercise of legislative powers in matters of taxation, that the claim, to satisfy which the tax was levied, was not recoverable by an action at law; but they insist that while the act in question does not in express terms require the trustee to levy an additional tax to meet this claim, it in effect does so; for if it is valid, the result is that an increased tax must be levied on the township to pay this specific claim; that it is, therefore, in effect, a local and special law for the assessment and collection of taxes off of the citizens of Wayne township only, to make good a loss of State tuition funds while in the hands of Speer as a public officer, and requiring the application of public money belonging to the township, and raised by taxation of its citizens, to the replacement of money in large part never raised by taxation of any kind, and in part raised by a State and not a township tax; that taxes are contributions paid by the inhabitants of a county for the use of the government; that a tax for private purposes is unconstitutional, though it pass through the hands of public officers and is a solecism in language; that taxation, by the very meaning of the term, implies the raising of money for public uses, and excludes the raising of it for private objects and purposes; that the Legislatures of the States have no power in the right of taxation to take private property, without the owner's consent, for any but a public object; that every person ought to contribute his just proportion to the public burthens, and for the purposes and exigencies, but he can not legally be called upon to contribute more than his equal and just proportion for such purposes; that this would be the result if the township could be taxed to reimburse the trustee; that such apportionment would be contrary to the spirit of the constitution of Indiana, and would violate the spirit of our institu-

tions and impair the property rights which it is the object of a free government to protect; that this was a flagrant abuse of legislative power, which the courts are authorized to investigate and correct.

Numerous other criticisms of the statute in question are indulged in by the learned counsel for the appellant in their exhaustive brief, which we can not consider at length in the space necessary to this opinion. They call our attention to the preamble to our State constitution, R. S. 1881, p. 13, declaring its purpose and object in these words: "To the end that justice be established, public order maintained, and liberty perpetuated." Counsel say, the first object named is that "justice be established." Does it tend to establish "justice" to levy an arbitrary and oppressive tax upon the taxables of a township to give it to one of its citizens who does not and can not set up any legal or other claim to it?

Such an act they say tends to subvert all their ideas of "justice," and is clearly inconsistent with, and prohibited by art. 1, section 23 of the Bill of Rights in our State Constitution in this language: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens," and that the power of taxation vested in the Legislature is limited and restricted by section 22, article 4, of our State Constitution as follows: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * For the assessment * of taxes for State, county, township or road purposes." And by section 1, article 10 of the constitution, it is provided that the "General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation." Counsel, in the discussion of this question, we think, lose sight of the fact that there are other pro-

visions in the fundamental law of this State that must be considered and construed in connection with those to which they call our attention, and under them the act in question can not be regarded as private legislation. Section 23, article 4, provides that: "In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." Section 27, article 4 of the constitution of this State (Burns' Rev. 1894, section 123), declares that "every statute shall be a public law, unless otherwise declared in the statute itself." There is nothing in the act declaring it to be private. The act, therefore, for the relief of the appellee's relator, is a public statute, made so by the constitution, and must be so regarded by the court, and the decision of the question at bar must be made with reference thereto. Besides the subject-matter of the act indicates that it is public. It attempts to dispose of the public funds for the relief of the appellant, for the money lost by him as a public officer. The distinction between public and special statutes is that courts take judicial notice of public statutes without pleading, but not of private statutes. 2 Bouv. Law Dict. (Title), Statute, p. 663; *Hingle* v. *State*, 24 Ind. 34. We think, however, a public statute can not be valid, which is intended to, and does in effect, so tax an individual as to take private property for private use. It seems, from the record, that the appellee's relator, William H. Speer, voluntarily made up the money he had lost, to the amount of $2,812.90, belonging to the various school funds, and this being so, he occupied to his township, as to that money, the position neither of debtor nor creditor. He had no right in law or in equity to a return of the money, and a return of it to him would amount to nothing short of a gift. Raising the funds

for that purpose from the various taxpayers of Wayne township, by tax, would be, in effect, taking the property of one man to bestow it upon another. It would be a taxing of the property of the citizens of that township for a private, and not a public use.

Here was an unconstitutional discrimination between citizens, in this, that the act arbitrarily requires the taxpayers of Wayne township to give the relator the sum of $2,812.90, and fastens upon the township and its taxpayers a debt for that amount, for which the township never received anything, and for which it never gave its consent nor contracted a liability. In our opinion the General Assembly is not vested with the power to legislate a tax upon the people of a township for a private purpose, and 'the court can not, with the design of carrying out such an act, require the township trustee to levy a tax therefor. In Hare's Am. Constitutional Law, volume 1, p. 278, it is said: "To warrant taxation, the purpose must consequently not only be beneficial but concern the public. A merely private benefit is not enough, although conferred upon the parties who oppose the tax and affording an ample compensation; because under a free government, when no public considerations are involved, every man should be allowed to choose for himself.* * A tax, as defined in Webster's Dict., * * 'is a burden imposed by the legislature on persons or property for public purposes,' and no tax which manifestly contravenes this principle can be valid." Citing the *Loan Association* v. *Topeka*, 20 Wall. 655; *People ex rel.*, v. *Board of Supervisors*, 26 Mich. 29. We quote from *Allen* v. *Inhabitants of Jay*, 60 Me. 124, as follows: "Taxation, by the very meaning of the term, implies the raising of money for public uses, and excludes the raising if for private objects and purposes." In *Sharpless* v. *Mayor, etc.*, 21 Penn. St. 147, BLACK, C. J., said: "I concede that

a law authorizing taxation for any other than public purposes, is void." In *City of Camden* v. *Allen*, 2 Dutch. 398, GREENE, C. J., remarks that "A tax, is an impost levied by authority of government, upon its citizens or subjects, for the support of the State." In *Hanson* v. *Vernon*, 27 Iowa 28, DILLON, C. J., observes that, "No authority * * nor even dictum can be found, which asserts that there can be any legitimate taxation, where the money to be raised does not go into the public treasury, or is not destined for the use of the * * governmental divisions of the State." In the case it was further said: "The acquisition, possession and protection of property are among the chief ends of government. To take directly or indirectly the property of individuals to loan to others for purposes of private gain and speculation, against the consent of those whose money is loaned, would be to withdraw it from the protection of the constitution, and submit it to the will of an irresponsible majority. It would be robbery and spoliation of those whose estates, or a portion of whose estates, is thus confiscated. No surer or more effectual method could be devised to deter from accumulation, to diminish capital, to render property insecure, and thus paralyze industry."

In *Lowell* v. *City of Boston*, 111 Mass. 454, the court held an act of the Legislature unconstitutional and void, that authorized the city of Boston to loan, on sufficient security, to the sufferers from a great fire in that city, amounts not exceeding in the aggregate twenty million dollars, to enable them to rebuild upon their property, because it was an appropriation of public money to private use, and made taxation necessary for private purposes.

In the case of *Thorndike* v. *Inhabitants of Camden*, 82 Me. 39, the appellant, as collector for the appellee, improperly accepted a note in payment for certain taxes,

and, after having accounted for it as money, and being unable to collect it, the town voted a tax to reimburse him. It was held by the Supreme Court that the citizens could not be taxed for such a purpose, and that property can only be taxed for lawful public purposes.

So, in *Bristol* v. *Johnson*, 34 Mich. 123, a statute was held unconstitutional and void which provided for raising money by taxation to reimburse a township treasurer for a sum paid by him to the township to make good an amount of the public money of which he had been robbed.

In *In re Deansville Cemetary Assn.*, 66 N. Y. 569 (572), it was held that "Whether the use is in its nature private or public is the question upon which the right of the Legislature to interfere with private property depends. All cases concede this principle. Whether the use is of a public or private nature can only be determined by judicial inquiry."

The case of *Hanson* v. *Vernon, supra,* also declares it to be a judicial question.

We think the law is well settled that nothing can fairly be regarded as a public use, unless it be a State use or a national use in furtherance of a State use. To defray the necessary expenses of a township, or to make necessary improvements in a township, is a State or public use. But the donation of a large sum of money to the relator in this case can not be regarded as a public use of money. It is not pretended, in the pleadings in the case at bar, that there was any money in the treasury at the time the special legislation for the benefit of the relator was passed and became a law, out of which the money so generously sought to be donated to him could have been paid. The record shows there was but $439.53 in the treasury even up to the time of the trial. In this

case, only a small part of the funds lost by the public officer was raised by taxation.

In the third paragraph of return to the alternative writ of mandate, it was alleged that of the money lost by Speer, by failure of the bank, $2,701.04 belonged to the funds denominated in section 4325 of the Revised Statutes of 1881, the "common school fund," "interest on the congressional township school fund," and the "school revenue for tuition," and that $1,328.14 thereof belonged to the "special school fund"; that after the failure of the bank, Speer repaid himself, as trustee, out of his own private funds, all of said sum of $2,701.04 owing to the common school fund, interest on the congressional township school fund, and the school revenue for tuition, and $111.86 on the amount lost out of the special school fund. Judgment was not taken against Speer and his sureties for any part of the money so repaid. This was the very money for which the General Assembly has attempted to reimburse him. This was pleaded as a return only to so much of the alternative writ as related to a recovery of the aforesaid sum of $2,701.04 belonging to said school funds, other than the special school fund.

By section 4325, R. S. 1881, it is provided that "The funds heretofore known and designated as the surplus revenue fund, all funds heretofore appropriated to common schools, the saline fund, the bank tax fund, the fund which has been derived or may be derived from the sale of county seminaries and the property belonging thereto, the moneys and property heretofore held for such seminaries, all fines assessed for breaches of the penal laws of the State, all forfeitures which may accrue, all lands and other estate which shall escheat to the State for want of heirs or kindred entitled to the inheritance thereof, all lands which have been granted, or may be granted hereafter, to the State, when no special object is

expressed in the grant, the proceeds of the sales of the swamp lands granted to the State of Indiana by the act of Congress of September, 1850, the taxes which may be assessed from time to time upon the property of corporations for common school purposes, and the fund arising from the one hundred and fourteenth section of the charter of the State Bank of Indiana, shall be denominated the 'common school fund.' " See, also, section 2, article 8, of the State Constitution.

No such tax as seems to have been contemplated in this act against the property of corporations having previously been authorized, and no such tax collected, no part of the money lost by Speer belonging to the "common school fund" was raised by taxation.

On the 19th day of April, 1816, Congress invited Indiana to meet in convention and take her place among the sisterhood of States, tendering for her free acceptance or rejection the following proposition:

"That the section numbered sixteen, in every township, and when such section has been sold, granted or disposed of, other lands, equivalent thereto and most contiguous to the same, shall be granted to the inhabitants of such township for the use of schools." Goodrich's History of Indiana, p. 273.

This proposition was accepted.

By section 4325, R. S. 1881, it is provided that "The fund derived from the sale of congressional township school lands, and the unsold congressional township school lands, at the reasonable value thereof, shall be denominated the 'congressional township school fund,' and shall never be diminished in amount, the income of which, together with the taxes mentioned and specified in the first section of this act (section 4465), the money and income derived from licenses for the sale of intox-

icating liquors, and unclaimed fees, as provided by law, shall be denominated the 'school revenue for tuition.' "

The State, through these means, had on hand at the time Speer was trustee of Wayne township, a principal sum of about nine million dollars, which can not be diminished, the income of which was apportioned through the State and applied to furnishing tuition to the common schools thereof.

The only portion of the sum of $2,701.04, heretofore mentioned, that was raised by taxation was such as was apportioned to the township out of the "school revenue for tuition," raised on the State tax provided for in section 4465, R. S. 1881, which provides for a sixteen cent levy on "each one hundred dollars of taxable property—real and personal—in the State, and fifty cents on each taxable poll, for the purpose of supporting a general system of common schools."

None of the money so lost, therefore, except the small sum of $111.86, was money raised by taxation off of the citizens of Wayne township.

These were State funds turned over to the trustee, as a public officer, to be applied by him to furnishing tuition to the common schools of a political division of the State.

Upon the loss of such funds by this officer, the General Assembly could not lawfully or justly impose upon the citizens and taxpayers of Wayne township the burden of making good such loss.

This branch of the case presents the question of the right of the Legislature to divert township funds to other than local or township purposes; and, in this, it differs from the case of *Mount, Tr.,* v. *State, ex rel.,* 90 Ind. 29, and *Board, etc.,* v. *McLandsborough,* 36 Ohio St. 227, upon which appellee relies in support of the

contention that the act now assailed is valid. In the case last cited, the court declared that the power of relieving a public officer from the responsibility for loss of public money was purely legislative, where the funds so lost were raised by taxation.

While we do not approve the doctrine expressed, that the Legislature may, under any circumstances, relieve a trustee from the obligations of his contract, yet, in neither of the cases cited, does the court recognize a right in the General Assembly to legislate a debt upon the people to be liquidated by taxation, unless the funds lost were "raised by taxation"; and they must have been raised by local taxation on the political division to be charged with the burden. This principle is recognized in *Farris* v. *Vannier*, 6 Dak. 186; Cooley Taxation, chapter 5, pp. 144, 145; 1 Desty Taxation, 26, 27; *Hammett* v. *Philadelphia*, 65 Pa. St. 146 (151); *Dorgan* v. *City of Boston*, 12 Allen, 223; *In re Flatbush*, 60 N. Y. 398; *County Com'rs* v. *Com'rs*, etc., 70 Md. 443.

So far as the act in question attempts to release the trustee and his bondsmen from liability on account of judgment rendered against them in the Marion Superior Court, we think the act is in conflict with section 24 of the Bill of Rights, which provides that "No * * * law impairing the obligation of contracts, shall be passed," and is therefore void, and, further, that the Legislature has no power to reimburse a public officer for money by him lost in his official capacity.

In our opinion, the act of April 8, 1885, *supra*, for the relief of William H. Speer, is inoperative and void, and the court erred in the several rulings complained of.

The judgment of the court below is reversed, with instructions to overrule the demurrer to the second, third and fourth paragraphs of the defendant's return to the

writ of mandate herein, and for further proceedings not inconsistent with this opinion.

Filed June 20, 1894.