SMITH *et al. v.* FULLER, ordinary, *et al.*

1. Where a county treasurer embezzled funds of the county, and a judgment was rendered against him and the sureties on his official bond, and the latter made payments partly extinguishing the indebtedness, a subsequent resolution passed by the General Assembly which authorized the county authorities to refund to the sureties any and all sums which they had paid, except such amount as had been expended as costs in the prosecution of the principal, was a violation of article 7, section 16, paragraph 1, of the constitution, which declares that "The General Assembly shall not, by vote, resolution, or order, grant any donation, or gratuity in favor of any person, corporation, or association;" and there was no error, on application of the county, in enjoining the county treasurer from paying to the sureties warrants which were issued by the ordinary under such legislative resolution.

2. Whether such resolution was also invalid as being retroactive in its character and impairing the obligation of a contract need not be determined in this case, as the injunction was properly granted for the reason set out in the preceding headnote.

3. This ruling does not conflict with that made in *Coleman* v. *Neal*, 8 *Ga.* 560, *Shannon* v. *Reynolds*, 78 *Ga.* 760 (3 S. E. 653), and *Neal Loan and Banking Co.* v. *Chastain*, 121 *Ga.* 500 (49 S. E. 618), in each of which there were claims of indebtedness against the county, which had been audited, and warrants had been issued therefor, and upon refusal of the county treasurer to pay such warrants an application for mandamus to compel him to do so was made.

4. To a proceeding by the county to enjoin an illegal payment of funds from its treasury the ordinary was not a necessary or proper party. But the overruling of a demurrer based on that ground will not necessitate a reversal of the entire judgment. The injunction having been properly granted, direction is given that the judgment be so modified as to strike from the case the ordinary as a party plaintiff.

OCTOBER 13, 1910.

Injunction. Before Judge Fite. Dade superior court. January 15, 1910.

The County of Dade and Fuller, as ordinary, filed their equitable

petition, alleging, in brief, as follows: In 1907 the County of Dade recovered a judgment against John M. Castleberry as principal, and D. E. Tatum, T. F. Smith, George W. Cureton, and J. R. Brock, sureties. Castleberry had been treasurer of the county, and the other defendants were the sureties on his official bond. Before and after the judgment Smith, Tatum, and Cureton paid upon the indebtedness certain sums, which were paid into the treasury of the county. The amount of the treasurer's default as found, and for which a judgment was rendered against him and his sureties, was about $4,000. Subsequently the legislature passed a resolution, which was approved August 17, 1908, reciting the default of the treasurer, and his conviction of embezzlement on account thereof; that the sureties were liable for $2,858; and that some two thirds of the citizens and taxpayers of the county had signed a petition asking that the sureties be relieved from liability on the bond. It then proceeded: "Therefore be it resolved by the General Assembly of Georgia, that the county authorities of Dade be and they are hereby authorized to relieve J. R. Brock, T. F. Smith, George W. Cureton, and D. E. Tatum from liability on account of said bond, and that said county authorities be also authorized to refund the said sureties any and all sums which said sureties or either of them have already paid on account of said bond, except such amount as has been expended as costs of the prosecution against said Castleberry." Acting under this resolution the ordinary, on December 31, 1908, issued county warrants to Tatum, Cureton, and Smith, amounting to $1,253.05. The treasurer of the county will pay such warrants, unless restrained by proper order. The resolution passed by the legislature was unconstitutional and void, and the warrants issued thereunder are likewise illegal and void. Such resolution was in violation of article 1, section 3, paragraph 2, of the constitution, which provides that no retroactive law or law impairing the obligation of contracts shall be passed. It also violated article 7, section 16, paragraph 1, of the constitution, which provides that the General Assembly shall not, by vote, resolution, or order, grant any donation or gratuity in favor of any person, corporation, or association. It also violated article 1, section 10, paragraph 1, of the constitution of the United States, providing that no State shall pass any law impairing the obligation of contracts. The plaintiffs prayed that the treasurer be enjoined

from paying the warrants, and for process and general relief. The defendants filed no answer, but interposed a demurrer on the grounds that the ordinary was not a proper party plaintiff, and his name should be stricken, and that the petition failed to state any facts sufficient to authorize the relief prayed for. The court overruled the demurrer, and, when the case came on for trial, granted a perpetual injunction. The defendants excepted.

*J. P. Jacoway* and *Maddox, McCamy & Shumate,* for plaintiffs in error. *W. U. Jacoway* and *Foust, Payne & Tatum,* contra.

LUMPKIN, J. (After stating the foregoing facts.) It was alleged that a county recovered a judgment on the bond of its treasurer, against him and his sureties; and that before and after the judgment was rendered the sureties paid upon the indebtedness certain sums, which were paid into the county treasury. When this was done, the indebtedness was discharged to the extent of such payments, relatively to the sureties. The money became a part of the general county funds, and belonged to the county just as completely as any other funds in its treasury arising from taxation or other sources. The sureties did not any longer owe that amount to the county, and the county owed the sureties nothing. They had no claim against it, either legal or moral. To pay a creditor a portion of his just claim raises no counter-claim against him in favor of the paying debtor. To require a county to give back the amounts so received was not to compel the discharge of any obligation, legal or moral, resting on it. The resolution sought to authorize the county authorities to make to the sureties a gift of a portion of the funds in the county treasury. In McClelland *v.* State, 138 Ind. 321 (37 N. E. 1089), a township trustee deposited in a bank, in his individual name, funds belonging to the civil and school township. The bank failed, and the deposit was lost. The trustee repaid himself as trustee from his private means the amount so lost. His successor in office recovered judgment against him and the sureties on his official bond, and received a certain amount from the receiver of the bank. The legislature passed an act for the relief of the trustee and his sureties, in which the township was directed to reimburse him out of the township funds. There were some funds in the treasury, but not enough to make the payment. Dailey, J., said (p. 331): "It seems, from the record, that the appellee's relator, William H. Speer, voluntarily made up the money

he had lost, to the amount of $2,812.90, belonging to the various school funds; and this being so, he occupied to his township, as to that money, the position neither of debtor nor creditor. He had no right in law or in equity to a return of the money, and a return of it to him would amount to nothing short of a gift. Raising the funds for that purpose from the various taxpayers of Wayne township, by tax, would be, in effect, taking the property of one man to bestow it upon another. It would be the taxing of the property of the citizens of that township for a private, and not a public use."

By article 7, section 16, paragraph 1, of the constitution of this State (Civil Code of 1895, § 5903) it is declared: "The General Assembly shall not, by vote, resolution, or order, grant any donation or gratuity in favor of any person, corporation, or association." If the legislature would not have the right to give from the treasury of the State a portion of its funds to sureties who had paid in such money, certainly they could not make such a gift from the county treasury. The funds of a county generally arise from taxation. If, when a defaulting treasurer embezzles such funds, and when his sureties, against whom a judgment has been rendered on the bond, pay a portion of the indebtedness against them, the legislature can require the county to give it back to them, the taxpayers may have again to pay taxes to replace the funds so lost and needed for public purposes, and, in effect, be taxed to make a gift to the sureties.

We are aware that in some cases it has been held that sureties on the bond of a defaulting county or township officer can be relieved from liability by the legislature, and that an officer who loses public money without fault on his part can be relieved. One case has come to our attention which even went so far as to hold that the legislature could require such an unfortunate officer to be reimbursed an amount which he had paid in. Without discussing the merits of such rulings, it is sufficient to say that it does not appear that the constitutions of the States where they were made contained any such provision as that in our own constitution, which has been quoted above. In some jurisdictions counties are treated as mere political divisions of the State, or public agencies, and may be created, changed, or abolished by the legislature; and in some cases it has been held, that, in the absence of any constitutional restriction, the legislature may direct the purposes for which county

taxes may be levied and used. In Georgia the constitution declares that each county shall be a corporate body. The legislature can not create new counties; nor can they dissolve existing counties, or change county lines or county sites, except in accordance with the constitutional provisions on the subject. Counties are restricted as to incurring debts, and they are forbidden to levy any tax except for certain specified purposes. Constitution, art. 11, sec. 1, par. 1-5 (Civil Code, §§ 5924-5928); art. 7, sec 6, par. 1, 2 (Civil Code, §§ 5891, 5892). Under such a constitution the legislature has no power to authorize or require a county to levy a tax for any other purposes than those specified, or to use funds arising therefrom for other than such objects.

The present case is different from that of *Jordan* v. *Baynes,* 48 *Ga.* 462, in which, pending proceedings by scire facias against the sureties on a bond given for the appearance of defendant in a criminal case, the General Assembly passed an act relieving the sureties from liability, on the payment of costs. The solicitor-general contended, that, as the law provided that he should have a fee of 5 per cent. on all amounts collected on proceedings to enforce a recognizance, he had a vested right in the bond to the amount of five per cent. thereof. It was held, that "This was a debt due to the State, and not a debt due to the solicitor-general," and that the State, which was the party in the scire facias proceedings, through the General Assembly, could release the sureties. In the case now before us the treasurer's bond was required to be made payable to the ordinary of the county. Political Code, § 455. When given, the property of the treasurer, as well as that of the sureties, was bound from the time of its execution for the payment of any liability arising from a breach. § 456. The county treasurer did not keep funds of the State, but those of the county. And, as already noted, there had not only been a judgment on the bond but a payment of funds in partial discharge of the liability. The matter of relieving sureties on criminal recognizances has been dealt with, since the decision in the *Jordan* case, by the constitution, article 3, section 7, paragraph 19 (Civil Code, § 5781).

The contention that the resolution of the General Assembly was void, because it was retroactive and impaired the obligation of a contract contained in the bond, may also have merit; but as we have held the resolution authorizing repayment to the sureties to be

void for the reason above given, it is unnecessary to consider other grounds of invalidity urged against it.

It was argued that warrants issued by the ordinary upon the county treasurer were in the nature of judgments, and were conclusive; and in support of this position counsel cited the cases of *Shannon* v. *Reynolds,* 78 *Ga.* 760 (3 S. E. 653), and *Neal Loan & Banking Co.* v. *Chastain,* 121 *Ga.* 500 (49 S. E. 618). In each of those cases services had been rendered to the county, and the claim therefor had been considered by the ordinary, and warrants issued for the amounts found by him to be due. The county treasurer refused to pay such warrants, and application was made for a writ of mandamus to compel him to do so. In the former case, which was followed in the latter, Hall, J., said: "Unless this treasurer, who is the executive officer of the ordinary, could show that the order on him was fraudulent, or that a mistake existed as to the amount found to be due, he could not go behind the judgment of the ordinary, acting as county commissioner, directing the payment of this sum." In *Coleman* v. *Neal,* 8 *Ga.* 560, there was also a mandamus to compel the county treasurer to pay a warrant. The proceeding was first had against the inferior court, or its justices, who preceded the ordinary in dealing with county matters. A mandamus absolute was rendered against them, adjudicating the validity of the claim. The county treasurer then resisted payment of the warrants issued, on the same grounds as those which had been set up by the justices of the inferior court. In a proceeding by mandamus against him it was held that it was not in his power to defend himself for causes existing prior to the grant of the order; and that "the county treasurer may defend under the inferior court and in privity with them, but not against them." In *Franklin County* v. *Crow,* 128 *Ga.* 458 (57 S. E. 784), in an action by a county to recover a sum claimed to have been unlawfully paid by the treasurer to the ordinary as fees, although the claims had been audited by the county commissioners and ordered to be paid, it was held that it appeared on the face of the orders that such claims were for fees which the statute declared to be unlawful, and they did not preclude a recovery by the county. See also *Winter* v. *Jones,* 10 *Ga.* 190 (19), 207 (54 Am. Dec. 379) ; *Park* v. *Candler,* 113 *Ga.* 647 (39 S. E. 89). In the case at bar there was no claim that the county owed the sureties on the bond of its de-

faulting treasurer, and no auditing of claims against the county. It would be an extraordinary ruling to hold that if the ordinary sought to give away county funds without any authority of law therefor, and issued warrants for that purpose, the county would be bound by such warrants as judgments, and could not protect itself against such unlawful gifts. The warrants were not set out in full in the record; but it was alleged, and admitted by demurrer, that they were issued under the resolution of the legislature, which we have held was void and conferred no authority upon the ordinary to issue them.

One ground of the demurrer was that the ordinary was improperly joined as a party plaintiff. It was alleged that the county had recovered a judgment on the bond, and had received in its treasury certain payments, which it was sought to have repaid to the sureties. We do not see how the ordinary was either a necessary or a proper party to a proceeding to enjoin the making of such payments. But including him as a plaintiff along with the county, and the refusal on demurrer to strike him as a party, does not require a reversal of the entire judgment. A direction that the judgment be so modified as to strike his name from the case will cure any error in that regard, and such direction is given.

*Judgment affirmed with direction. All the Justices concur.*