## FARMERS' LOAN & TRUST CO. OF NEW YORK v. WILCOX COUNTY, GA.

(District Court, S. D. Georgia. April 9, 1924.)

1. **Subrogation ⬤≈23(I)—Lender held not subrogated to the rights of creditors paid with the money borrowed.**

   Where a county paid outstanding warrants with money borrowed for another purpose, as expressed in the resolution authorizing the borrowing, the lender did not become the equitable owner of the warrants so paid, with subrogation to the rights of the original holders.

2. **Subrogation ⬤≈26—Volunteer paying other's debt not entitled to subrogation.**

   A mere volunteer in paying the debt of another, in which he has no interest, is not entitled to subrogation to the rights of the creditor.

3. **Subrogation ⬤≈23(I)—Use by county of money illegally borrowed to pay indebtedness does not subrogate lender to rights of original creditors.**

   Payment by a county of outstanding warrants with money borrowed, for which purpose it was prohibited by the state Constitution from borrowing money without first submitting the question to a vote of the electors, which was not done, cannot subrogate the lender to the rights of the holders of the warrants.

4. **Courts ⬤≈375—State statutes of limitations enforced in federal courts.**

   State statutes of limitation, both in equity and at law, are enforced in the federal courts.

5. **Counties ⬤≈200—Claim for subrogation held one which must be presented to county within the time prescribed by statute.**

   A claim to be subrogated to the rights of former holders of county warrants paid with money of claimant *held* one which must be presented to the county within 12 months after accrual, under Civ. Code Ga. 1910, § 411.

6. **Limitation of actions ⬤≈28(I)—Claim against county held barred by limitation; "implied undertaking."**

   A claim to be subrogated to the rights of former holders of county warrants paid with money of claimant is one arising "upon an implied undertaking," within Civ. Code Ga. 1910, § 4362, and is barred thereunder in four years.

7. **Limitation of actions ⬤≈48(6)—That a warrant is drawn against a particular fund does not establish the fact that such fund exists.**

   That a warrant is drawn on a particular fund does not raise a presumption that there is money in such fund for its payment, for the purpose of starting the statute of limitations to running against an action on the warrant.

In Equity. Suit by the Farmers' Loan & Trust Company of New York against Wilcox County, Ga. Petition dismissed.

John R. L. Smith and Grady C. Harris, both of Macon, Ga., for plaintiff.

Eldridge Cutts and Harry Hodges, both of Fitzgerald, Ga., for defendant.

BARRETT, District Judge. Wilcox county, Ga., on September 2, 1917, issued its promissory note, payable six months after date, to W. H. Patterson, or bearer, for $20,000, with interest, a copy of which, together with the resolution upon which it was founded, is set forth in 284 Fed. 856, 857. The Farmers' Loan & Trust Company, averring that it was a holder for value, brought suit on said note against Wilcox

⬤≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

county. Such suit was dismissed on demurrer by this court on October 31, 1922, as reported in said 284 Fed. 856, which decision was affirmed by the Circuit Court of Appeals on March 6, 1923 (287 Fed. 809), and a petition for certiorari from said latter decision was denied by the Supreme Court of the United States on June 4, 1923 (262 U. S. 755, 43 Sup. Ct. 703, 67 L. Ed. 1207).

The present petition avers that on or about January 4, 1916, the board of county commissioners and county treasurer of Wilcox county received from Eyer & Co. $20,000, and delivered a promissory note therefor, payable December 31, 1916, together with a resolution, all of the same import, with appropriate change of dates, as the said note and resolution reported in 284 Fed. 856; that said money was delivered in good faith and in reliance upon the validity of said documents, but the said documents were invalid, because the note was not for "a temporary loan to supply a casual deficiency of revenue," and was not authorized by an election; that said money was by the treasurer of said county turned over to holders and owners of certain lawful warrants of the said county, of which a list is attached, said warrants bearing dates from April 6, 1914, through September 6, 1915; that said warrants were marked "Paid," but that the money paying therefor was not the money of the defendant, but of Eyer & Co.; that the turning over of said money of Eyer & Co. by the treasurer to the holders of the warrants and the turning over of the warrants to the said treasurer was in equity and good conscience a purchase of said warrants by the treasurer for and on behalf of said Eyer & Co., and the said Eyer & Co. "became and were subrogated to all the rights of the previous owners and holders of said warrants and stood in their places as lawfully entitled to receive from defendant the amounts represented by said warrants"; that on or about January 5, 1917, petitioner received from said county a note, dated January 2, 1917, payable September 2, 1917, of the same import as that reported in 284 Fed. 856, with the appropriate change of dates; that said $20,000 advanced by petitioner was turned over to Eyer & Co. in reimbursement of the money of said Eyer & Co., and the said Eyer & Co. delivered up its note to the treasurer, who paid Eyer & Co. with the money thus advanced by petitioner; that the turning over of the said money to Eyer & Co. "was not in equity and good conscience an extinguishment of the rights of said Eyer & Co. as equitable purchasers and assignees of said warrants, and as subrogated to the rights of the previous holders and owners of said warrants"; that the money turned over to Eyer & Co. was the money of petitioner, and that such transaction made petitioner the equitable purchaser of said warrants as aforesaid, and entitled petitioner to be subrogated to the position of the owners and holders of the said warrants; that on or about September 2, 1917, the said county issued to your petitioner, in exchange for said note maturing September 2, 1917, a note, payable six months after date, for $20,-000, of the same import and with the same resolution attached, the dates being changed, as the note maturing September 2, 1917; and the prayer is that petitioner be decreed to be the equitable owner of said warrants and be subrogated to all of the rights of the owners and holders of said warrants.

Defendant's answer sets up that under the facts stated in the petition the relief prayed for is not authorized for the following reasons: (1) The petitioner is not entitled to be subrogated to the rights of the holders and owners of the said warrants and is not the equitable purchaser thereof; (2) the rights asserted in such petition are barred by the statute of limitations; (3) such claim has not been presented to the county to be audited by the ordinary or other county authority; and (4) there has been such laches on the part of petitioner as to debar it from obtaining the relief sought.

Petitioner asserts two rights: (1) That it be declared the equitable owner of the warrants paid originally by money of Eyer & Co., who were reimbursed by the money furnished by petitioner; and (2) that petitioner be subrogated to the rights of the holders or owners of the original warrants.

[1] 1. The claim to be the equitable owner is presumably founded upon the principle thus stated in Bispham's Principles of Equity (9th Ed.) § 337:

"A mere volunteer, who pays the debt, cannot claim to be subrogated. If such payment is in fact a purchase of the debt, and is intended to operate as such, the assignee will acquire as an incident to his purchase the right of subrogation."

It would seem, therefore, that the assertion of the claim to be the equitable owner is, in effect, but another statement of the claim to be subrogated: An essential element to subrogation under this principle is absent, for it not only was not implied that the money furnished by petitioner or by Eyer & Co. was to be used to purchase the warrants, but it affirmatively appeared that "said money is to be borrowed for the purpose of defraying expenses of said county in anticipation of collection of taxes." Not only was this affirmatively declared purpose apparently the real purpose at the time the money was borrowed, but such view seems to have been confirmed by the effort on the part of petitioner to collect the *note* given for the money.

[2] 2. Is petitioner entitled to subrogation to the rights of the owners of the original warrants? The statements of the essentials to this right of subrogation, originating with the court and by adopted quotations, contained in the case of Ætna Life Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537, stand unmodified by any subsequent decision of such court, and are therefore binding on this court. The Supreme Court of Georgia recognizes the same essential elements, fully stated in Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204, and manifestly followed in Sackett v. Stone, 115 Ga. 466, 41 S. E. 564, and in Webb v. Harris, 124 Ga. 723, 53 S. E. 247. Such doctrine is stated in the third headnote to the Middleport Case, as follows:

"The doctrine of subrogation in equity requires (1) that the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded * * * to one who is a mere volunteer in paying a debt of one person to another."

It is therefore essential, not only that the claimant for subrogation shall have paid the debt due to a third party, but—

"that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded to one who is a mere volunteer in paying a debt of one person to another."

Can it be fairly claimed in this case, under the facts as they appear in the petition, that petitioner paid, or intended to pay, any debt then owing by the county; and still less that it paid, or intended to pay, the debt owing to Eyer & Co., the money arising from which had itself in turn been used to pay warrants, some of which were nearly two years old at the time that the debt to Eyer & Co. was created? If such was the intention of petitioner at the time that the money was advanced by it, the conclusion cannot be escaped that it perpetrated a wrong in accepting for such money an obligation of the county in which, by reference at least, it was affirmatively stated that the money was to be used "for the purpose of defraying expenses of said county in anticipation of collection of taxes." "Expenses" cannot by any fair interpretation be construed as existing indebtedness; and still less can it be construed as having in contemplation the payment of debts represented by warrants, some of which were approximately three years old. But, even if it be construed as the payment of either the debt of Eyer & Co. or the debts represented by the original warrants, the petitioner in this case was wholly a volunteer, and was under no compulsion to save himself from loss by making such loan.

[3] The enforcement by courts of the observance of the principles of "common honesty" and natural justice, in requiring repayment of money borrowed, is a high privilege; but, if this is to be done at the cost of nullifying important protective provisions of the Constitution, such privilege must yield to the higher duty of maintaining the fundamental provisions of our government. The inhibition contained in paragraph 1, § 7, art. 7, of the Constitution of the state of Georgia that no—"county, municipality, or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein, without the assent of two thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law," had its origin in the effort to prevent existing and prospective evils, as is fully explained in City Council of Dawson v. Dawson Waterworks, 106 Ga. 696, 32 S. E. 907. If the claim set up in this petition be sustained, the purpose of such provisions would seem to be utterly frustrated. If a county can borrow money, alleging it to be used for the payment of current expenses, and it is, contrary to such purpose, appropriated to pay off outstanding warrants, and if, by a like declaration, new money can be obtained to pay the outstanding note first issued or other warrants, and each lender, whether original or subsequent, can be subrogated to the rights of the holders of the original warrants, there is nothing to prevent an indefinite accumulation of illegal debts by a county, which will be enforceable against the

county by reason of subrogation. However culpable may be the county officers who perpetrate such a transaction, the lender participating therein should not be heard to complain. Every lender knows the constitutional requirements, and has access to the records disclosing other facts essential to a valid loan. Shall he be protected from loss under these circumstances at the cost of wrecking the rights of the citizens of the county or municipality?

In the case of Irvine v. Board of Commissioners of Kearney County (C. C.) 75 Fed. 765, those who took the bonds relinquished directly to the county valid warrants, and the taking of the bonds did not increase the indebtedness of the county. In Coffin v. Board of Commissioners of Kearney County (C. C.) 114 Fed. 518 (this case and the Irvine Case both on appeal, 126 Fed. 689, 61 C. C. A. 607), the same facts existed. In Geer v. School District, 111 Fed. 682, 49 C. C. A. 539, the authority existed to create a *debt* of the amount involved, though the creating of a *bonded debt* to such an amount was prohibited. The substance of this decision is merely to the effect that the debt could be collected, though bonds innocently accepted therefor could not be enforced.

In the case of Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238, the city was apparently attempting to hold land pledged, in substance, to secure it against loss by reason of the payment of the bonds, and at the same time to repudiate the bonds, and naturally the court held that the bondholders would be entitled to the benefit of the land, and the city could not hold the land and not pay the bonds.

In Butts County v. Jackson Banking Co., 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. Rep. 244, this was practically an agreement for the purchase of the warrants by the bank, though that was not the exact contract, and the bank when it paid the warrants canceled them, relying upon the county's paying it the money thus advanced. Moreover, this was an action for money had and received, and not a claim for subrogation, as is the case at bar. Furthermore, there was no inconsistency at any time in the claim set up by the bank. It apparently was satisfied that the agreement of the county to pay the amount advanced by it in extinguishment of the warrants was valid. It knew that the money was to be thus used. It did not, as in this case, enter into a contract that the money was to be used for a definite purpose, and thereafter set up a claim for subrogation alleging it to have been used for the extinguishment of warrants.

In Commercial Trust Co. v. Laurens County (D. C.) 267 Fed. 901, Sibley, District Judge, held that one who furnished money to a county under an unlawful contract, but which money was received by the county and used for the extinguishment of a lawful indebtedness, could to the extent of the money thus used recover for money had and received. Such conclusion is apparently in conflict with some of this opinion, but it is not in conflict with the precise question here decided, namely, that there exists no right of subrogation on the part of petitioner to the rights of the holders or owners of the original warrants issued by Wilcox county, of which a list is attached to the petition.

3. The prayer in this petition is solely to establish the right of subrogation, in subrogation being included the question of equitable pur-

chase or equitable assignment, and that after such right shall have been established plaintiff may proceed to enforce payment. No money judgment is prayed.

[4] The defendant contends that, however meritorious may have been originally the substantive right sought to be established, its enforcement is barred for each and all of the following reasons:

(a) This claim was not presented within 12 months from its accrual, as required by section 411 of the Code of Georgia of 1910, reading as follows:

"All claims against counties must be presented within twelve months after they accrue or become payable, or the same are barred, unless held by minors or other persons laboring under disabilities, who are allowed twelve months after the removal of such disability."

(b) This claim is based upon an alleged implied undertaking, which is barred under section 4362 of said Code of Georgia, as follows:

"All actions upon open account, or for the breach of any contract not under the hand of the party sought to be charged, or upon any implied assumpsit or undertaking, shall be brought within four years after the right of action accrues."

(c) If the six-year statute of limitations applicable to warrants (Code of Georgia, § 4361) governs this case, the bar exists because the petition shows that the warrants were drawn against specified funds; that in the absence of denial these funds were presumably existent at the time of the drawing of the warrants; that under the Georgia law the statute commences to run against warrants from the date the fund is provided out of which such warrants are payable; and that such funds existed in January or February, 1916, more than six years before the filing of this petition.

(d) That petitioner is guilty of laches sufficient to defeat the assertion of the alleged rights.

[5] State statutes of limitation, both in equity and at law, are enforced in the federal courts. Campbell v. Haverhill, 155 U. S. 610, 15 Sup. Ct. 217, 39 L. Ed. 280; Hayden v. Thompson (C. C. A., Eighth Circuit) 71 Fed. 60 (5) 17 C. C. A. 592; Cockrill v. Butler (C. C.) 78 Fed. 679 (1). This claim to be subrogated to the rights of the former owners of the warrants is such as must be presented to the county for payment within 12 months after its accrual, as required by section 411 of the Code of Georgia. If the claim were on the warrants themselves, such presentation would not be necessary. Smith v. Fuller, 135 Ga. 271 (3), 69 S. E. 177, Ann. Cas. 1912A, 70, and citations. But the question here is not as to the validity of the warrants. The single question is: Does the right of subrogation exist? All the reasons set forth in Maddox v. County of Randolph, 65 Ga. 217, apply here. The Supreme Court of Georgia manifests the same conclusion in Butts County y. Wright, 136 Ga. 697 (2a), 71 S. E. 1046, and Id., 143 Ga. 253, 84 S. E. 443.

[6] Whatever limitations apply at law apply equally in equity. Code Ga. 1910, § 4369. The claim here sought to be established arises by implication, if at all, and is controlled by the aforesaid section 4362 of the Code of Georgia, fixing the limitation at four years. If enforce-

ment of the warrants, as well as establishment of the right of subrogation, were sought in this one proceeding, authorities might be found that would seemingly apply the six-year statute of the warrants, and hold that if the warrants were not barred at the time of the filing of this petition the right of subrogation would not be barred. The better opinion is, as I will endeavor to show, to the contrary. However, even if I am in error as to such conclusion, the result here would inevitably be to apply the four-year statute, for in the petition herein nothing is sought but the right of subrogation, and when that shall have been established:

"That complainant is entitled to use and enforce all the means, processes and remedies which any previous holders and owners of said warrants may have had for requiring defendant to pay the same."

What created the right of subrogation, if anything? Payment to the holders of the warrants. When did that occur? More than four years before the filing of this petition. What is the issue made here? The existence or nonexistence of such right of subrogation. Such right does or does not exist wholly independent of whether the writing to which petitioner seeks subrogation is a simple writing or under seal, governed by six-year or twenty-year limitation. In order for plaintiff to enforce payment of such warrants, two steps must be taken: First, to establish the right to subrogation; and, second, to enforce payment of the warrants. When the first step alone is attempted, only the statute applicable to it need be considered. If both steps had been attempted in one proceeding, the statutes applicable to both should have been considered; that is, four years as to the first, and six years as to the second, and if either had been barred the right sought should be denied. This view is strongly stated by Bradbury, C. J., in Zuellig v. Hemerlie, 60 Ohio St. 27, 35, 53 N. E. 447, 449, 71 Am. St. Rep. 707–712, as follows:

"Strictly speaking, there are two distinct causes of action in such cases—one consists of those facts that show the right of the plaintiff to be subrogated to the rights of the creditor in the securities held by the latter; the other consists of those facts which show that the security may be enforced against the principal. In the natural order of precedence, the party must establish his right to be subrogated to the security before he can be permitted to enforce it. If the facts alleged, and upon which the right of subrogation depends are denied, they must be established by proof as in any other civil action. In the case before us, if the right of subrogation is not established, the action fails and no relief can be granted."

We find a condensed statement to the same effect in the case of Charmley v. Charmley, 125 Wis. 297, 310, 103 N. W. 1106, 1110, 110 Am. St. Rep. 827–837:

"The cause of action to be enforced is one thing; the cause of action to enforce it is another; neither can survive the death of the other."

See, also, Kreider v. Isenbice, 123 Ind. 10, 23 N. E. 786.

This principle is recognized by the Supreme Court of Georgia, in Hull v. Myers, 90 Ga. 674, 16 S. E. 653. See the body of the opinion, commencing on page 681 (16 S. E. 654). Subrogation *at law* upon payment by the surety was created by statute (Code of Georgia, § 3567),

and all that is necessary under such statute is payment by the surety, who can then bring suit on the original obligation. In the Myers Case, supra, it is said:

"Subrogation, a native of equity, but an alien in law, is thus naturalized in the latter and admitted to an equal standing throughout the whole juridical territory. It seems plain that the Code intends to effect the substitution by its own vigor, and not leave it to be done by any court or any judicial proceeding. As soon as the debt is paid, the surety paying it is subrogated to the creditor's rights and to any and all remedies for the enforcement thereof, for his own reimbursement. * * * It is of the nature of legal rights to need no suit merely to declare their existence or to have the rights specifically awarded or decreed; they are always in possession of the owner, and do not have to be sued for and recovered. Suits founded upon them are brought to satisfy their claims or redress their violation. He who has a legal right of present substitution in place of a creditor. is already substituted; he need not apply to any court for leave to occupy the creditor's place; *he need not appeal to any court to ascertain and declare whether the facts of his case entitle him to substitution* [our italics], nor report to any court that he elects or has elected to be substituted. Were it necessary to do any of these things, he might have to take some step before his right to sue at law for money paid was barred, as was ruled in Rittenhouse v. Levering, 6 Watts & S. 190."

[7] 4. I do not think that the fact that the warrant is alleged to have been drawn upon a particular fund establishes the fact that such fund existed. The scope of its meaning is that the warrant is to be paid out of the fund, whether in existence or thereafter to be created. For this reason I do not sustain the contention set forth in sub-section "c" above.

5. However inconsistent may have been the contentions of petitioner at the different stages of its attempt to collect its money, I am not of the opinion that it was guilty of laches under the facts set forth in the petition.

For the reasons above set forth, the petition in the above case is hereby dismissed, at the cost of petitioner.