STATE EX REL. JACKSON, ATTORNEY GENERAL *v.*
MIDDLETON ET AL.

[No. 27,112. Filed February 27, 1939.]

220

Omer S. Jackson, Attorney General, and Glen L. Steckley, Deputy Attorney General, for appellant.

Elliott & Fell and Fesler, Elam, Young & Fauvre, for appellees.

SHAKE, J.—From 1928 to 1932 appellee Middleton was clerk of the Howard Circuit Court and appellee The Employers' Liability Assurance Corporation, Ltd., was surety on his official bond. At the expiration of his term Middleton had on deposit in three Kokomo banks, which had been designated as public depositories by the county board of finance, the sum of $18,011.25; said banks failed during the term but the clerk had realized $13,534.79 on his deposits and this sum was turned

over to the new clerk, leaving a balance of $4,476.46 unpaid. This action was commenced by the State of Indiana on the relation of the Attorney General to recover said sum of $4,476.46, and the further sum of $299.08, which it was charged that Middleton had collected as clerk and for which he had failed to account.

The appellees answered in general denial and with two affirmative paragraphs. We are only concerned with the second paragraph, which charged that chapter 121, Acts of 1937 (§61-664 Burns' Supp. 1938, §13844-85 Baldwin's Supp. 1937), relieved appellees of all liability for moneys impounded or lost in the closed banks. A demurrer to the second paragraph of answer was overruled. The cause was tried on a stipulation of facts and resulted in a judgment against appellees for $249.33, and no more. Appellant filed a motion for a new trial, which was denied, and this appeal followed.

We are first called upon to consider the appellees' motion to dismiss. It is shown that before the appeal was perfected the appellees paid to the clerk of the Howard Circuit Court the full amount of the judgment of $249.33, with interest and costs; that the clerk issued his usual receipt therefor and entered a memorandum of satisfaction on the proper judgment docket. The present clerk has filed a counter-affidavit admitting the above facts, and further showing that no distribution has been made of the proceeds of said judgment to the county treasurer or anyone else, and that he is holding the same as trust funds, subject to the further orders of the court.

Appellees rely upon chapter 38, Acts of 1881 (Spec. Sess.), §2-3201 Burns 1933, §471 Baldwin's 1934, which provides that "the party obtaining judgment shall not take an appeal after receiving any money paid or collected thereon," and the rule laid down in the case of *State ex rel. Carson, Auditor of Cass County* v. *Hebel*

*et al.* (1880), 70 Ind. 314. That case held that a county treasurer had authority to receive and receipt for, and a county auditor had power to give a quietus for, the amount of a judgment recovered on the bond of a defaulting county treasurer, for moneys due the county; and although such receipt and quietus were given without the sanction of the county commissioners, an appeal by the plaintiff would not afterwards lie to this court from such judgment. Appellees contend that the successor clerk is a real party in interest in this litigation, and that his act of receiving the money paid to him on the judgment had the effect of placing it in the hands of the real plaintiff, and thereby extinguished the right of appeal.

The Attorney General asserts that under section 49-2719 Burns 1933, §1438 Baldwin's 1934, the present clerk had no discretion to refuse the money tendered him by the appellees in payment of the judgment appealed from; that in receiving same he merely discharged a duty imposed upon him by law, and that this act did not amount to an acceptance of the proceeds by a party to the action, since the funds were undistributed and merely held in trust by a public officer, subject to the further directions of the court having jurisdiction of the case.

The situation with respect to the legal effect of the payment of the judgment is complicated by the fact that the funds sought to be recovered in the action are those which, if realized, would belong to Middleton's successor as clerk, and such successor is the person to whom the judgment was paid, though he did not institute or prosecute the action that resulted in the judgment appealed from. It may be noted that the statute relied upon by the appellees (§2-3201 Burns 1933, §471 Baldwin's 1934) precludes an appeal by a party receiving any money paid or collected.

It is therefore pertinent to inquire whether the successor clerk is a party within the meaning of the statute, and whether he received the money in the sense contemplated. In the Carson case, *supra,* the conclusion of the court appears to be predicated upon the fact that the relator who brought and maintained the action also issued the quietus by means of which the judgment was satisfied. In the present case the successor clerk is a stranger to the record so far as the named parties are concerned. His act in receiving the money, issuing a receipt therefor, and crediting it on the margin of the judgment docket is nothing more than he should and would have done had moneys been paid to him in discharge of any judgment rendered by the court of which he was clerk. The Carson case is, therefore, clearly distinguishable, since we find lacking in the case at bar the element of the voluntary acceptance of benefits by the judgment creditor.

The statute (§2-3201 Burns 1933, §471 Baldwin's 1934) is merely declaratory of the common law rule that a party cannot accept the benefit of an adjudication and yet allege it to be erroneous. 4 C. J. S., p. 416. But, like most general rules, this has its exceptions and it is accordingly recognized that an acceptance of an amount to which the acceptee is entitled in any event does not estop him from appealing from or bringing error to the judgment or decree ordering its payment. *City of Indianapolis* v. *Stutz Motor Car Co.* (1932), 94 Ind. App. 211, 180 N. E. 497. The facts upon which the court below rendered judgment against the appellees for $249.33 were stipulated by the parties and are undisputed. The appellant has not challenged the propriety of that part of the judgment by cross-errors and, so far as the motion to dismiss the appeal is concerned, the case comes clearly within the exception to the rule stated above. Appellees' motion to dismiss is therefore denied.

The merits of this appeal turn upon the validity of chapter 121, Acts of 1937, §61-664 Burns Supp. 1938, §13844-85 Baldwin's Supp. 1937). This act by its terms undertakes to release public officials from personal liability when funds in their custody, trust, and otherwise are lost by reason of the failure or insolvency of banking institutions in which they are deposited. In such event the county, or other political subdivision, is subrogated as to any dividends arising from the liquidation of the bank, and persons entitled to moneys which were so deposited are authorized to make claims against the proper political subdivision or corporation therefor. It is directed that such claims shall be allowed if found correct and paid out of the general fund without an appropriation.

Prior to the passage of chapter 30, Acts of 1937, §61-673 Burns' Supp. 1938, §1438-1 Baldwin's Supp. 1937 (which is not the statute here challenged), a clerk of a circuit court did not come within the provisions of any public depository law of the state and was not required to keep the funds received by him by virtue of his office, in any place designated by any other authority than himself. This created a situation of absolute liability for funds coming into the hands of such officer. It was frequently held that, under such circumstances, the official became an insurer of the funds with which he was charged and liable for their loss in the event of the failure of the bank in which they were placed. *Inglis et al.* v. *State ex rel. Hughes, Trus. Van Buren T'p., Madison Co.* (1878), 61 Ind. 212; *McClelland, Trustee* v. *State ex rel. Speer* (1894), 138 Ind. 321, 37 N. E. 1089. The rule adopted by this state is in harmony with the weight of authority. 93 A. L. R. 819, Ann.

The Attorney General finds himself in a somewhat anomalous situation by urging the unconstitutionality of a statute. It is his contention that the act of 1937 is invalid for three reasons: (1) because it impairs the con-

tractual rights of persons entitled to funds with which the clerk is charged to assert claims therefor against the clerk and his surety; (2) that the act is discriminatory in its classification; and (3) because the General Assembly possesses no power to provide for the payment of private or trust funds out of moneys raised by general taxation.

It appears to have been settled by this court that the release of a public official from liability for funds lost on account of the failure of the bank in which such funds were deposited does not impair the obligation of contracts. *Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 191 N. E. 158, 96 A. L. R. 271. *McClelland, Trustee* v. *State ex rel. Speer, supra,* and *Johnson* v. *Board of Commissioners of Randolph County* (1895), 140 Ind. 152, 39 N. E. 311, were, in effect, overruled by the Bolivar case, *supra.* The decisions of this court now appear to be in accord with the weight of general authority upon the subject. See 38 A. L. R. 1512 and 96 A. L. R. 295.

It is next claimed that the act of 1937 discriminates in favor of clerks and their creditors in those cases where such clerks had the funds in public depositories (at a time they were not required so to do), and against clerks and their creditors who did not have the funds in such designated depositories. The contention is that the classification based upon the premise that the clerk had utilized an unrequired depository is arbitrary and unreasonable and violates section 23 of article 1 of the State Constitution, which prohibits the General Assembly from granting to any citizen, or class of citizens, privileges or immunities which, upon the same terms, do not equally belong to all citizens. A statutory classification, in order to be constitutional, must be reasonable and natural, and there must be some inherent and substantial difference

germane to the subject and purpose of the Legislature between those included and those excluded. *School City of Elwood* v. *State ex rel.* (1932), 203 Ind. 626, 180 N. E. 471. It is within the province of the Legislature, in the first instance, to determine what classification is just and reasonable in view of the purpose to be attained, and the court will not lightly substitute its judgment for that of the Legislature. *Martin* v. *Loula* (1935), 208 Ind. 346, 194 N. E. 178, 195 N. E. 881.

It is likewise settled by the decisions of this court already cited, as well as by the weight of authority, that where funds raised by taxation are involved, it is within the purview of the Legislature to relieve the officer for their loss when they have been entrusted by him to a designated depository. This conclusion must be based, in part at least, upon the fact that such officer has acted circumspectly and in such a manner that he should not be called upon to bear the burden. Upon principle, there would not seem to be any reason why the same considerations should not validate legislation to relieve the officer when he has utilized such public depository, though not so required by positive statute. In either event the exercise of sound judgment and prudence on the part of the officer in the handling of public funds must be regarded as a basis for the legislative relief. The legislation here in question may have been prompted by the legislative conclusion that, in permitting officers other than clerks to deposit funds in a public depository, and thus be relieved of responsibility therefor, and denying that privilege to the clerks of the circuit courts, an injustice was done the clerks. It can not be doubted that the clerks might have been included with the other officers, and failing to relieve the clerks by permitting them to take advantage of the depository law, was a legislative error, and that those clerks who did all within their power to come within the depository law, and who deposited their

funds in public depositories, were entitled to public consideration; that there is a moral responsibility, a moral obligation, to them that did not exist toward clerks who did not use designated public depositories and made no effort to bring themselves as far as might be within the depository law. With the wisdom of classification, if reason for it may be found, the courts have no concern. We are not at liberty to substitute our judgment for that of the law-making body as to what is or is not a wise classification in a statute. It is enough if, from the terms of the act and the subject upon which it operates, there appears some reasonable justification for the classification.

It seems clear from the provisions of the act of 1937, as well as from the legislative policy as revealed by other similar statutes enacted in this state, that the principal purpose of the act was for the relief of the public officials to which it applied. In that view of the case, the provision for reimbursing persons who had moneys in the hands of the clerks was merely incidental to the main objective, and was necessary to the end that such persons might not be deprived of their rights of redress against the clerks, individually, or upon their official bonds. The validity of the act must therefore be determined in the light of the paramount purpose, rather than from a disassociated consideration of its incidental features. If the situation were reversed, and the prime purpose of the act appeared to be to relieve persons who had moneys in the hands of clerks, a serious situation with respect to classification would be presented by the fact that all similarly situated would not be equally protected.

The Attorney General has pointed out in his brief that in all the cases in which the validity of legislation releasing officers from liability for the loss of public funds has been upheld, the funds lost were the property of or belonged to a governmental subdivision. He recognizes

the right of the state to forgive the loss of its own funds, but he urges that the funds lost in the instant case did not belong to the state, but were the property of litigants, witnesses, publishers, heirs, beneficiaries, legatees, minors, and other persons for whose benefit the funds were paid into the hands of the clerk. He denies the right of the Legislature to make good the loss of these funds out of moneys raised by general taxes.

Some of the authorities do make the distinction that statutes which undertake to relieve public officials can not stand when they are applied to funds other than those raised by general taxes. Thus in *Mount, Trustee* v. *State ex rel. Richey* (1883), 90 Ind. 29, 46 Am. St. Rep. 192, the court said, in quoting from *Board, etc.* v. *McLandsborough* (1880), 36 Ohio St. 227 (p. 31) :

> " 'Indeed, it is difficult to fix any limit to the power of the General Assembly in this respect, *where the funds so lost were raised by taxation,* which, as we have said, is clearly a legislative power' " (Our italics.)

And further (p. 31) :

> "It is, perhaps, true, that the Legislature can not authorize the assessment of a tax for a mere private purpose . . ."

The language quoted was by way of dictum, since the case before the court did not concern funds which were not raised as taxes.

In *McClelland, Trustee* v. *State ex rel. Speer, supra,* it was held that the Legislature had no power to impose upon taxpayers of a township the burden of making good the loss of common school funds (not raised by taxation) occasioned by the failure of a bank. The statute there under consideration was held void, however, for other reasons disapproved in the Bolivar case, *supra.*

The Bolivar case considered the constitutionality of a

statute in some respects similar to the one before us (ch. 78, Acts 1933.) In holding the act valid, Hughes, C. J., quoted the following language from *McSurely* v. *McGrew* (1908), 140 Iowa 163, 168, 118 N. W. 415, 132 Am. St. Rep. 248 (p. 192) :

"'If nothing but private rights were involved, it is manifest that the act could not be sustained.'"

The power of taxation is an essential and inherent attribute of sovereignty, belonging as a matter of right to every independent government. It is a legislative power, and is limited only by the provisions of the constitution. *State ex rel. Goodman, Prosecuting Attorney* v. *Halter* (1898), 149 Ind. 292, 47 N. E. 665, 49 N. E. 7.

It is implied in all definitions of taxation that taxes can be levied for public purposes only. This doctrine, now so firmly established in our system of constitutional law, is of comparatively recent origin and finds its justification in the due process clause of the Fourteenth Amendment to the Federal Constitution, adopted in 1868. It was nine years later, however, before the United States Supreme Court applied the principle as a matter of substantive law. *Davidson* v. *Board of Admrs. of New Orleans* (1878), 96 U. S. 97. The exact line of cleavage between what is, and what is not, a public use, is somewhat difficult to mark. Some purposes readily align themselves on one side of the line as being clearly public in their nature, while others as readily fall on the other side as being obviously private, and there is a debatable ground between the two. The courts have never attempted to lay down with minute detail an inexorable rule distinguishing public from private purposes, because it would be impossible to do so. Such determination is primarily one for the legislative branch of the government and it can not be held to any narrow or

technical rule of action. Courts will not intervene unless there is a plain departure from every public purpose which could reasonably be conceived. *Laughlin* v. *City of Portland* (1914), 111 Me. 486, 90 Atl. 318, 51 L. R. A. (N. S.) 1143; *Carmichael* v. *Southern Coal & Coke Co.* (1937), 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, 109 A. L. R. 1327.

So far as the purposes for which taxes may be imposed, they are identical with the purposes for which the government may contract debts or make appropriations. An exercise of the powers of government may cause injury to particular individuals and, under some circumstances, the moral obligation may be such as to justify an exercise of the taxing power in favor of private persons. Such obligations may go beyond the limits of common law liabilities and be such as a just man would recognize in his own affairs, whether by law required to do so or not. Cooley, The Law of Taxation, Vol. 1, 4th Ed., §§174, 177, and 194. A moral obligation means that some direct benefit was received by the state as a state, or some direct injury has been suffered by the claimant under circumstances where, in fairness, the state might be asked to respond, and there must be something more than mere gratuity involved. *People* v. *Westchester Nat. Bank* (1921), 231 N. Y. 465, 132 N. E. 241, 15 A. L. R. 1344. Whether the facts existing in any case bring it within the class of claims which the Legislature ought to recognize as founded upon equitable and moral obligations is largely one for the Legislature to decide for itself. *United States* v. *Realty Company* (1896), 163 U. S. 427, 16 S. Ct. 1120, 41 L. Ed. 215.

Much might be said in support of the moral responsibility resting upon the state to make good the loss of funds in the hands of circuit clerks. The judiciary is one of the co-ordinate branches of government; circuit

courts are an integral part of the judicial system of the state; clerks of such courts are very important officers thereof; and moneys placed in the hands of such clerks, pursuant to judgments and court orders, are regarded as *in custodia legis*. Notwithstanding the fiduciary character of the authority upon which clerks received and held the moneys of private citizens, the state failed, until after the passage of the act here complained of, to provide a public depository law applicable to these officers, although it had done so with respect to the custodians of its own funds.

We are not at liberty to say that the General Assembly abused its power when it recognized a moral responsibility on the part of the state to make good the losses suffered by persons whose funds were on deposit to the credit of circuit clerks in closed banks. Their payment, in accordance with the terms of the act, did not amount to a mere gratuity. The political subdivisions and public corporations required to absorb the losses were subrogated to the rights of the clerk against the closed banks. The Legislature may have reasoned that the burden placed upon the taxpayers was necessary and proper to the end that confidence in the government and respect for its courts should not be materially weakened.

We hold the act valid.

Judgment affirmed.

Roll, J., dissents.

### DISSENTING OPINION.

ROLL, J.—This was an action brought in the name of the State of Indiana, on the relation of the Attorney General, upon the official bond of Louis Middleton, former clerk of the Howard Circuit Court, to recover from the defendants the unpaid balance of all funds, including costs, fees, and trust funds, which said defendant Middle-

ton had collected and received as said clerk, and which at the expiration of his term and ever since, he has failed to pay over to his duly elected and qualified successor in office. By this suit recovery was sought for the total sum of $4,775.54, of which $4,476.46 is the balance charged to the defendant Middleton as such clerk, at the expiration of his term of office, as shown by the records of said office and at the time of trial remaining unpaid to his successor. The balance of said total amount ($299.08) was alleged to be money received by defendant Middleton as such clerk, as costs in certain proceedings, with which the defendant did not charge himself upon the records of said office, and did not account for or pay over to his successor.

Appellees answered the complaint by general denial, and by a second paragraph of answer wherein it was stated that defendant Middleton had paid over to his successor in office all money with which he was chargeable at the end of his term except $4,476.46; that he had deposited the funds coming into his hands as clerk in certain banks which had been designated public depositories by the board of finance of Howard County, but that said money was not deposited under the terms of the depository act because said act was not applicable to a clerk of the circuit court; that said banks failed before the expiration of said Middleton's term; that at the expiration of his term he had $18,011.25 on deposit in said banks, of which $13,534.79 had been paid to his successor and that the balance of $4,476.46 is the money described in plaintiff's complaint, except the items in Exhibit D, which was the sum of $299.08 mentioned above. Appellees further alleged that the defendant Middleton was relieved of liability for said sum of $4,476.46 by the virtue of the provisions of ch. 121, p. 697, Acts 1937, section 61-664 Burns' Supp. 1938, §13844-85, Baldwin's Supp. 1937.

Plaintiffs filed a demurrer to the second paragraph of answer for insufficient facts to constitute a defense to the complaint. The memorandum attached to the demurrer in effect alleged that said ch. 121, of the Acts 1937 was ineffective to release the defendants or either of them from the liability claimed because said act contravenes Art. 1, section 23, of the constitution of Indiana, and section 1, of the Fourteenth Amendment to the Constitution of the United States in that said act attempted to grant to certain citizens privileges and immunities which upon the same terms belong equally to all citizens and has attempted to abridge the privileges and immunities to the citizens of the United States. That said act contravenes Art. 1, section 24, of the Constitution of Indiana, in that it impairs the obligation of contract.

The court overruled appellant's demurrer to the second paragraph of answer. There was a third paragraph of answer filed by the defendants which we need not consider in this opinion. The decision of this case depends upon the constitutionality of ch. 121, of the Acts of 1937. Sections 1, 2, and 3 of the above entitled act read as follows:

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That every officer and former officer of and in any municipal corporation in this state who, in his official capacity, deposited any funds payable to any municipal corporation, or who deposited any public funds or any trust funds received by or coming into the possession of such officer, by virtue of his office, in any bank or trust company which had been designated, as provided by law, as a depository of public funds, and which at such time was a depository, but when such funds could not be deposited under the terms and provisions of the depository act, be and is hereby relieved, released and discharged from any and all personal liability on account of the loss of any such money caused by the failure or insolvency of any such bank or trust company, and such liability shall be

assumed by the municipal corporation for or in which such officer served or is serving in an official capacity. Such municipal corporation shall have the right to receive any dividends arising from the liquidation of such bank or trust company, to the extent of its interest.

"Sec. 2. That the legal claim of any officer or former officer contemplated in section 1 of this act to any funds on deposit in any such bank or trust company shall inure to the municipal corporation for, in and on behalf of which such officer has officially served or is serving, and such municipal corporation shall be charged with full liability for the proper distribution of all such fees and funds so deposited by such officer. Any person or any municipal corporation to whom or to which such funds, or any part thereof, may be due and owing, is hereby authorized to prosecute his or its claim for the recovery of such funds, in his name or its corporate name, or otherwise, against such municipal corporation charged with the liability for such funds, and which is hereby declared to be fully subrogated to all of the rights which such officer or former officer would have had if this act had not been passed.

"Sec. 3. Any person who may have any money due and owing to him from such fund may file his claim therefore (therefor) with such municipal corporation taking over such deposits, as provided herein, and such claim, if found correct, shall be approved and shall be paid out of the general fund of such county, township, city or town with appropriation therefor."

Sections 4 and 5 of said act defines the meaning of municipal corporations and other terms used in said act; section 6 is the emergency clause.

Before the passage of ch. 30, Acts 1937, the clerks of circuit courts of the various counties in Indiana were not required to deposit the funds coming into his hands as such clerk in a public depository, but was governed by section 49-2719 Burns' Ind. Statutes Ann. 1933, §1438 Baldwin's 1934, ch. 24, §1, p. 37, Acts 1875, which provides:

"The clerks of the several courts throughout this state are hereby authorized to receive money in payment of all judgments, dues and demands of record in their respective offices and all such funds as may be ordered to be paid into the respective courts of which they are clerks by the Judges thereof; and said clerks with their sureties shall be liable on their official bonds for all monies so received by said clerks and so paid into such courts under the order of the Judges thereof, to any person who may be entitled to demand and receive such money or funds from them."

By article 6, §2, of the constitution of the State of Indiana the office of clerk of the circuit court is created by the constitution of the State of Indiana. Prior to the enactment of the depository law in Indiana all public officials in the state were held as insurers of the funds in their custody. *Holbert* v. *State ex rel.* (1864), 22 Ind. 125; *Inglis* v. *State* (1878), 61 Ind. 212; *Mount* v. *State* (1883), 90 Ind. 29; *McClelland* v. *State* (1894), 138 Ind. 321, 37 N. E. 1089; and under this rule, which is known as the insurance rule and which was adopted in this state, such officer was absolutely liable for the loss of said funds whatever the cause of such loss might have been, with one exception, that exception being when such loss was occasioned by what was designated as the Act of God or the Public Enemy. See *Inglis* v. *State, supra; Mount* v. *State* (1883), 90 Ind. 29; *McClelland* v. *State, supra.* In the first above cited cases the loss was occasioned through the failure of the bank in which the deposits had been made and such deposit was made without knowledge on the part of the officer that such bank was in failing circumstances, and it was not contended or charged that the deposit was made without diligence or care on the part of the officer making such deposits.

After the depository act was passed it was held that any officer coming within the provisions of the depository

act and who deposited funds as designated would be relieved from liability for the loss of such funds caused by the failure of the bank in which such funds were so deposited, and it might be noted that there is no provision made by such depository laws for the reimbursement to the party suffering loss.

By section 49-2703 Burns 1933, §1430 Baldwin's 1934, the clerks of the circuit courts of this state were required to give bond conditioned for the faithful discharge of the duties of his office and the payment to the proper person or persons of all monies that may come into his hands as such clerk. This statute provides:

"The respective boards of commissioners of the several counties throughout the state shall, at their first regular meeting after the taking effect of this act, determine the amount of bond which shall be required to be given by the respective clerks of the counties for which they are acting respectively, and every clerk shall give bond with surety as is now required by law, in the penal sum fixed by the board of commissioners of the county of which he is clerk, to be approved by said board, conditioned for the faithful discharge of the duties of his office, and the payment to the proper person or persons of all monies that may come into his hand as such clerk . . ."

Section 49-2704 Burns' Indiana Statutes 1933, §1431 Baldwin's 1934, provides:

"All clerks hereafter elected shall give bond as is required in the foregoing section."

It is urged by appellant that ch. 121, Acts 1937, *supra*, is unconstitutional for the reason that the classification therein made is unauthorized and that it discriminates in favor of a certain class of citizens and against another class of citizens in a like situation and with the same inherent needs and qualifications as the favored class. In order to determine whether or not the

classification made by the legislature in the enactment of a statute is a constitutional classification, the purpose of the act is important to consider.

We take as fundamental the proposition that the taxing power of a state can only be exercised to affect a public interest and a legislative act requiring tax for a private purpose is unconstitutional because it amounts to taking property without due process of law in violation of the fourteenth amendment of the United States Constitution. The learned author Grey in his work entitled "Limitation of Taxing Power" (sections 169 and 170) says:

> "In all the definitions of tax and taxes one element appears most prominently, to-wit, the necessity for a public purpose to justify the exercise of the taxing power. No principle of law is better established than this: That taxes can only be laid for public purposes; and that a tax laid for a private purpose, or to bestow some private benefits upon some individual or individuals is void regardless of the absence of express constitutional prohibitions . . .
>
> "This limitation upon the taxing power is based upon and derived from the inherent purpose of the state as a social organization."

Cooley on taxation, Volume 1, §174, 4th edition, says:

> "It is implied in all definitions of taxation that taxes can be levied for public purposes only; and the rule that taxes can be levied only for public purposes is so well settled that a lengthy citation of decisions so holding is unnecessary. This is said to be 'an underlying principle of our government.' Differences of opinion frequently arise concerning the power to impose taxation in particular cases, but all writers who treat the subject theoretically and all jurists agree in the fundamental requirement that the purpose shall be public, and they differ, when they differ at all, upon the question whether the particular purpose proposed is within the requirement, i. e., is a public purpose."

So the first question to determine is whether or not

we can find in this act a public purpose that would justify a levy of tax by the county to discharge the obligation imposed upon them by this act. If the clerk and his bondsmen are relieved from liability and such liability is assumed by the county then in order to discharge the liability and to secure funds with which to pay the different ones having claims against the clerk by reason of money having been deposited with the clerk or by reason of having deposited money with the clerk for their benefit, it goes without argument that a general tax must be levied upon the people and property of the county by the authorized officer, to raise such funds. The "public purpose" as pointed out in the majority opinion in the latter part thereof is found in these words (p. 231) :

> "Much might be said in support of the moral responsibility resting upon the state to make good the loss of funds in the hands of circuit clerks. The judiciary is one of the co-ordinate branches of government; circuit courts are an integral part of the judicial system of the state; clerks of such courts are very important officers thereof; and monies placed in the hands of such clerks, pursuant to judgments and court orders are regarded as *in custodia legis*. Notwithstanding the fiduciary character of the authority under which clerks received and held monies of private citizens the state failed until after the passage of the act here complained of to provide a public depository law applicable to these officers although it had done so with respect to the custodian of its own funds.

> "We are not at liberty to say that the General Assembly abused its power when it recognized a moral responsibility on the part of the state to make good the losses suffered by persons whose funds were on deposit to the credit of circuit clerks in closed banks. . . . It may have reasoned that the burden placed upon the taxpayers was necessary and proper to the end that confidence in the government and respect for its courts should not be materially weakened."

If the purpose of the act is to maintain public confidence in the courts, then to justify a classification, made by the legislature, we must be able to point out a substantial difference in the different classes that would necessitate different legislation for the different classes. In *Davis Construction Company* v. *Board, etc.* (1921), 192 Ind. 144, 150, 132 N. E. 629, this court very clearly stated the rule governing class legislation as follows:

". . . while some classification of the subjects of legislative action is necessary, and a reasonable classification based upon actual differences which inhere in the different subjects and embrace all within the class and the reason for the classification will be upheld, a classification, to be valid, must be based on substantial distinctions which make one class so different from another as to suggest the necessity for different legislation with respect thereto. An artificial, arbitrary, and unreasonable classification, as by designating certain individuals by name or description out of a larger number whose situation and needs do not differ from theirs, is forbidden by the constitution."

Let us keep in mind the public purpose of the act above pointed out. Only one way can this be accomplished, and that is by the state paying the creditors of the clerk. By paying in full those who were entitled to recover money deposited with the clerk, so no one would lose by reason of the failure of the bank. This result is accomplished by the provisions of the act, in that it provides for full payment by the state; but payment by the state is limited, by the classification made in the statute, to those where the clerk had deposited the funds in a public depository and withheld the benefits of the act from another class of citizens, namely all those who had money due them from the clerk in counties where the clerk did not deposit the funds in a bank that had been designated a public depository.

The real beneficiaries of the act are the creditors of

the clerk; those who were entitled to receive funds that had been paid to the clerk as such, and which he held for them. While it is true the clerk is a beneficiary of the questioned legislation, yet it will be seen that he was not the beneficiary the legislature really intended to protect. So I think it is clear that the legislature had in mind two classes of citizens; one class, namely, those persons who are creditors of the clerk in counties who had deposited the funds in a bank that had been designated a public depository, and those that are creditors of clerks, who did not deposit the funds in a bank that had been so designated. Now, what justification exists that would justify such a classification? Just how is the one class different from the other that would reasonably justify different legislation for each? Isn't it just as important to the state in order to maintain respect and confidence in the court, or in other words to accomplish the *public purpose* designed by the act, for the state to assume and pay those persons who had funds deposited with the clerk in counties that did not deposit the fund in a bank or other depository, that were not designated a public depository, as it is to pay those persons who had funds deposited with the clerk, that perchance had deposited such funds in a bank that had been designated a public depository? It seems to me that it is just as important to the state, that it maintain the respect and confidence of one of the classes as the other, and if the public purpose of the act be to maintain the respect and confidence of the public in our courts, then no classification should be made at all but the state should assume and pay all persons who were entitled to receive funds held by the clerk for their benefit, and not classify them, and make the classification depend upon what the clerk did, over whom they had no control, or had no voice in determining where the funds should be deposited. Such a classi-

fication in my judgment does not meet the constitutional requirements and is void. *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465.

It may also be noted that in this case the record affirmatively shows that the bond given by the clerk is altogether sufficient to pay all creditors of the clerk and that if the conditions of the bond are enforced there will be no loss whatever to any individual by reason of the failure of the banks of Howard County.

If the purpose of the legislation is construed to be to relieve the individual clerks and their bondsmen from liability another serious question is presented, namely, whether or not the legislature has authority to relieve such clerks and their bondsmen and to impose upon the local taxing districts, which is the county in this case, the burden of raising by taxation funds to reimburse and to pay the liabilities of such clerk. The funds in the hands of the clerk were not raised by general taxation. In other words, the question would be presented as to whether or not the taxing power can be exercised for the benefit of a private individual to relieve him from individual obligation which he voluntarily assumed. The rule is stated in *Carmichael* v. *Southern Coal & Coke Co.* (1937), 301 U. S. 495, 57 S. Ct. 868, 109 A. L. R. 1327-1336, as follows (p. 514):

> ". . . since the adoption of the Fourteenth Amendment, state taxing power can be exerted only to effect a public purpose and does not embrace the raising of revenue for private purposes. See *Green* v. *Frazier*, 253 U. S. 233, 238, 64 L. Ed. 878, 881, 40 S. Ct. 499; *Milheim* v. *Moffat Improv. Dist.*, 262 U. S. 710, 717, 67 L. Ed. 1194, 1199, 43 S. Ct. 694; *Fallbrook Irrig. Dist.* v. *Bradley*, 164 U. S. 112, 158, 41 L. Ed. 369, 388, 17 S. Ct. 56; *Jones* v. *Portland*, 245 U. S. 217, 221, 62 L. Ed. 252, 255, 38 S. Ct. 112, L. R. A. 1918C 765, Ann. Cas. 1918E 660."

The majority opinion attempts to justify the act on

the theory that the purpose of the act was to discharge a moral duty owing to the clerks, because the legislature was negligent and derelict in its duty in that when they enacted the depository law covering county officers, they did not include the clerks of the circuit courts, and that because some of the clerks of the state attempted to follow the depository law by depositing the funds placed in their hands, in banks that had been designated public depositories for other public officials, they thereby created a situation that would justify the legislature in considering such fact, to determine that an obligation rested upon them to pass an act which would relieve such clerks of the legal liability imposed by §49-2703 Burns (§1430 Baldwin's), *supra,* provided the funds were lost by failure of such public depository. The act here in question not only relieves certain clerks of such legal liability imposed by §49-2703 Burns (§1430 Baldwin's), *supra,* but transfers such liability to the taxpayers of the local county, and compels them to pay by the exercise of the taxing power the obligation theretofore resting upon the clerk. The majority opinion, as I interpret it, in effect, holds that the moral obligation created by the several clerks, in attempting to follow the public depository act as above pointed out, was sufficient to meet all constitutional objections urged against it.

I am unable to follow the reasoning of the majority opinion. It is my judgment that no such moral obligation was created, nor that the legislature was derelict in not including the clerks of circuit courts in the provisions of the public depository law at the time such law was enacted.

The clerks of circuit courts are elected by the legal votes of the county, and when they voluntarily assumed the responsibilities that accompanied the office and gave bond to secure that obligation there could be nothing

immoral in enforcing the liability thus assumed. By §49-116 Burns 1933, §13059 Baldwin's 1934, Acts 1925, ch. 30, p. 80, the cost of such bond is paid for out of the general fund of the county. It seems to me that the state would not be under any moral obligation to relieve such clerks of any liability which might be incurred during their terms of office and the clerks could not by any act of their own, in attempting to comply with some statute that had no application to them whatever, create a moral obligation on the part of the state to relieve them of such responsibility. It is not contended that the state or citizens of Howard County have done anything in the instant case that was wrong, or that by any imagination could be construed as creating a moral obligation to come to the rescue of such clerk and his compensated surety.

The decided cases involving the question of the constitutionality of statutes relieving public officers from liability where public funds are involved, or funds raised by taxation are clearly distinguishable from the case at bar, and have no decisive effect upon the question here involved except that such decisions clearly point out that the taxing power can only be exercised in the interest of the public, and not for private purpose.

How could there be any public interest here involved? Only the clerk and his bondsman are benefited. The record clearly shows that no creditor of the clerk would lose one penny. Every person who had a claim against the clerk would be paid in full. The bond was more than sufficient to cover the liability of the clerk. Who, then, other than the clerk and his compensated surety could be the beneficiary of such an act? Where is the public interest served by the enforcement of this law? What would justify the classification made by the statute? What public interest is protected and what benefit will inure to the state by compelling the taxpayers of How-

ard County to assume and pay the obligations the clerk voluntarily assumed? I can see none whatever.

It is my opinion that the above statute is clearly unconstitutional on the ground that there is no justifiable basis for the classification made by the statute, and that it is an unjustifiable exercise of the taxing power in that it is used for a private and not a public purpose.

It is my opinion that the judgment of the trial court should be reversed.