PUBLIC SERVICE COMMISSION OF INDIANA, ET AL. ETC. *v.* INDIANA BELL TELEPHONE COMPANY.

[No. 28,913. Filed June 5, 1953. Motion to dismiss overruled December 8, 1952.]

*Edwin K. Steers,* Attorney General. *J. Emmett Mc-Manamon,* former Attorney General, *Clyde H. Jones* and *Jesse D. Wright,* Deputy Attorneys General, *James T. Robison,* Public Counselor for appellants.

Attorneys for Intervenor:—*Walter F. Jones, Jr.* and *James T. Robison,* Public Counselors, *Franklin M. Schultz,* of counsel.

*Patrick J. Smith, Fred J. Capp, Hyle G. Burke, George W. Hand* and *Thompson, O'Neal & Smith,* (of counsel) all of Indianapolis, for appellee.

*John P. Randolph,* General Solicitor and *Austin L.*

*Roberts,* Asst. General Solicitor, for National Assn. of Railroad and Utilities Commissioners of Washington, D. C., as *amicus curiae.*

## ON MOTION TO DISMISS

DRAPER, J.—The Marion Circuit Court rendered a final judgment permanently enjoining the appellants from interfering, or attempting to interfere with the charging of rates and the collection of revenues by the appellee company in accordance with a certain approved schedule, until the appellants should, in the manner provided by law, establish and authorize reasonable and non-confiscatory rates for the appellee's intrastate services.

Appellants' motion for new trial, which asserted the insufficiency of the evidence and the illegality of the decision, was overruled, and this appeal was perfected.

Appellants' assignment of error reads as follows:

"1. The Court erred in its conclusion of law numbered 1.

"2. The Court erred in its conclusion of law numbered 2.

"3. The Court erred in its conclusion of law being subdivision 'a' of its conclusion of law numbered 3.

"4. The Court erred in its conclusion of law being subdivision 'b' of its conclusion of law numbered 3.

"5. The Court erred in its conclusion of law being subdivision 'c' of its conclusion of law numbered 3.

"6. The Court erred in its conclusion of law being subdivision 'd' of its conclusion of law numbered 3.

"7. The Court erred in its conclusion of law being subdivision 'e' of its conclusion of law numbered 3.

"8. The Court erred in its conclusion of law being subdivision 'f' of its conclusion of law numbered 3.

"9. The Court erred in overruling appellants' motion for new trial."

The appellee filed its motion to dismiss this appeal, assigning several grounds in support of said motion. It first insists that appellants' ninth assignment of error presents no question for the consideration of this court because certain exhibits introduced in evidence at the trial are not in the record, so that the bill of exceptions containing the evidence is not complete, and further because the bill of exceptions containing the evidence is not properly and sufficiently certified by the trial court.

If these assertions are true, the court cannot consider any question the answer to which requires a consideration of the evidence, and appellants' ninth assignment of error is unavailing. But appellants' failure to properly present to this court the questions raised by the ninth assignment of error is not jurisdictional. A dismissal of the appeal would not be justified, if for no other reason than that other questions, not depending upon a consideration of the evidence, would remain here for disposition. Appellants' further failure to brief the questions raised by said assignment of error would operate only as a waiver of those questions under Rule 2-17(f).

The appellee next asserts the insufficiency of the appellants' brief in that the complaint is not set out therein in full, and further that the brief is not so constructed as to comply with Rule 2-17 of this court, or to show a good faith effort to comply therewith. If this is true, the penalty would be affirmance of the judgment rather than the dismissal of the appeal. Defects in the brief do not go to the jurisdiction of this court, but rather have the effect of preventing a consideration of the matters which are not successfully presented. The appellee cites *Crousore* v. *Crawley*

(1943), 113 Ind. App. 529, 48 N. E. 2d 834, and *Free-man* v. *Cangany* (1944), 222 Ind. 282, 52 N. E. 2d 839, in support of its assertion that the appeal should be dismissed, but in each of those cases the judgment of the lower court was affirmed. The appeal was not dismissed.[1]

Burns' Stat., §54-111 provides for the appointment of a public counselor and outlines his duties. They are, generally speaking, to appear for and represent the interests of ratepayers, patrons, and the public at hearings before the public service commission; in appeals from the orders of said commission; and in all suits and actions in any court in which the commission is a party and which may involve rates for service and other matters affecting public utilities and the public.

The record here shows that during the pendency of this action in the court below Walter F. Jones, Jr., public counselor of Indiana, filed his written petition to intervene. The petition does not request that the public counselor be permitted to intervene as a party, either plaintiff or defendant, or that he be permitted to inter-

---

1. In the later cases in the Appellate Court and in this court the filing of a fatally defective appellant's brief has resulted in affirmance of the judgment, and not dismissal of the appeal. See *Lake Motor Freight Line* v. *N. Y. C. R. Co.* (1950), 228 Ind. 371, 92 N. E. 2d 221; *Hauser* v. *Markwell* (1942) 111 Ind. App. 420, 41 N. E. 2d 652; *Crousore* v. *Crawley* (1943) 113 Ind. App. 529, 48 N. E. 2d 834; *Williams* v. *Utilities Engineering Institute* (1946) 116 Ind. App. 452, 64 N. E. 2d 302; *Rosen* v. *Alexander* (1951) 121 Ind. App. 239, 98 N. E. 2d 223; *Cramer et al.* v. *Kelso et al.* (1952) 122 Ind. App. 246, 103 N. E. 2d 901. This is properly so since, if an appeal has been duly perfected, the filing of a brief, even tho fatally defective, does not deprive the reviewing court of jurisdiction. This court has on occasion entered an order affirming a judgment of the trial court after considering a motion to dismiss the appeal. This has been done where the briefs have been so fatally defective that it was quite apparent no question was presented, *Waggoner* v. *State* (1949) 227 Ind. 269, 85 N. E. 2d 642; *Winters* v. *State* (1928) 199 Ind. 719, 154 N. E. 478, or where it was apparent that no question had been reserved, *Anderson* v. *State* (1950) 228 Ind. 491, 93 N. E. 2d 201, and the appellee should not be put to the expense of answering. Such action is discretionary with the reviewing court.

vene for any specified purpose. It merely asks leave to intervene pursuant to Burns' Stat., §54-104, which had already been repealed and superseded by Burns' Stat., §54-111, neither of which sections purport to authorize the public counselor to appear in pending litigation as a party thereto.

The record shows no objection and the petition was sustained. The public counselor thereafter participated in the proceedings, and later filed a motion for new trial, but he was not named as a party in appellants' assignment of errors, nor has he attempted to file an assignment of errors or perfect a separate appeal. He did sign the assignment of errors filed by the appellants as one of the attorneys for appellants.

It is appellee's contention that the public counselor should have been named in the assignment of errors as a party to this appeal, and this asserted defect of parties is advanced as a ground for dismissing this appeal. Rule 2-6 in part provides: "In the title to the assignment of errors all *parties to the judgment* seeking relief by the appeal shall be named as appellants, and all *parties to the judgment* whose interests are adverse to the interest of the appellants shall be named as appellees." (Emphasis supplied.)

The public counselor was not a party to the judgment. The only judgment entered was a judgment against the commission enjoining it from interfering with the rates and charges approved by the court. The court here has before it all the parties to the judgment below. In *Rogowski* v. *Kaelin* (1942), 111 Ind. App. 584, 41 N. E. 2d 954, relied upon by appellee to sustain its position, the appellant failed to name in his assignment of errors any of his co-defendants below, all of whom were parties to the judgment. *Voss* v. *Balz* (1932), 203 Ind. 221, 179 N. E. 552, also relied

upon, was also a case in which the appellant failed to name parties to the judgment in the assignment of errors. *Greek Orthodox Church* v. *Alexander* (1927), 199 Ind. 528, 151 N. E. 1, 156 N. E. 545, merely holds that where a judgment denies relief to intervenors, and requires or forbids certain actions on their part, they are proper parties appellant.

The appellee filed its motion to dismiss this appeal and its brief in support thereof on July 8, 1952. The appellants filed their brief in opposition to said motion on August 14, 1952. The appellee moves to strike the appellants' brief from the files for the reason it came too late under the rules.

Rule 2-15, which has to do with the time allowed for filing briefs, does not limit the time within which an appellant's brief in answer to a motion and brief to dismiss an appeal may be filed. The rules do not provide that appellant's failure to file such a brief within any particular time shall be ground for striking such brief from the files. Cases cited by appellee in which appeals have been dismissed for failure of appellant to file or serve a copy of his brief on the assignment or errors within time have no application in a situation of this kind. A brief filed in opposition to a motion to dismiss should be filed within a reasonable time. If the filing of it is long delayed, it will or will not be received for filing within the discretion of this court. Appellee's motion to strike appellants' brief from the files is overruled.

The appellee lastly contends that the appeal must be dismissed because the appellants have voluntarily acquiesced in and recognized the validity of the judgment appealed from. On May 31, 1951, the public service commission authorized the appellee to charge and collect certain rates for its intrastate exchange, toll and

coin box telephone service. The proceeding was numbered 22632 before the commission. This action to vacate, set aside and enjoin the enforcement of said order was thereupon instituted by the appellee and the cause proceeded to judgment on January 30, 1952. The judgment reads in part as follows:

> "It is therefore ordered, adjudged and decreed, that until the defendant Public Service Commission of Indiana shall, in the manner provided by law, establish and authorize proper, reasonable and non-confiscatory rates for plaintiff's intrastate services, the said Public Service Commission of Indiana and its members and agents are and each is hereby enjoined from interfering or attempting to interfere with the charging of rates and the collection of revenues by plaintiff in accordance with the following, each of which has been filed by plaintiff with, and examined by, this Court and each of which is hereby approved, to-wit: . . . ."

Appellants' motion for new trial was overruled on March 25, 1952. While this case was pending in the court below the order of the commission entered on May 31, 1951, was rescinded, leaving no order of the commission governing rates and charges in effect. After the appellants' motion for new trial was overruled the commission gave notice that it would conduct further public hearings in 22632, and it is asserted by appellee that further hearings were thereafter held. It does not appear from appellee's motion to dismiss that as the result thereof the commission made any new order covering the rates and charges which the appellee is entitled to charge and collect for its services.

The appellee relies on *Poffinbarger* v. *Sumner* (1917), 186 Ind. 597, 117 N. E. 646, and *J. B. Goodall & Sons Co.* v. *Wagler* (1922), 79 Ind. App. 104, 137 N. E. 191, to sustain its position. These cases recognize the gen-

eral rule that "a party to a judgment impliedly waives his right to appeal therefrom if he voluntarily acquiesces in or recognizes the validity of such judgment or otherwise takes a position which would be inconsistent on any theory other than the validity and binding force of the judgment." p. 599 of *Poffinbarger* v. *Sumner, supra.*

In the first of these cases the defendant in a will contest case recognized the validity of a judgment setting aside and denying probate of the will by filing application for the appointment of an administrator. In the second the judgment of the court held a contract for the construction of a school house invalid. Thereafter the contractor accepted a new contract to construct the same building, and also sought to appeal from the judgment voiding the first contract. It was held that, by making the second contract, he recognized the validity of the judgment which voided the first contract. As above stated, these cases recognize the universal general rule, but on their facts neither of them are at all helpful.

The general rule above mentioned is sometimes stated to be that a party who voluntarily accepts the benefit of an adjudication must be held to thereby waive his right to have the adjudication reviewed. Like most other general rules, it is subject to many exceptions. *State ex rel. Jackson, Attorney General* v. *Middleton* (1939), 215 Ind. 219, 19 N. E. 2d 470, 20 N. E. 2d 509; *City of Indianapolis* v. *Stutz Motor Car Co.* (1932), 94 Ind. App. 211, 180 N. E. 497; 4 C. J. S., Appeal and Error, p. 414. It is not claimed, nor does it appear, that the commission did or could in any way benefit by the holding of these hearings.

*State ex rel. Jackson, Attorney General* v. *Middleton, supra,* was a case where the clerk of the circuit court

accepted money in payment of a judgment which had been rendered and from which an appeal had been taken. To support their motion to dismiss the appeal in that case, the appellees relied upon Burns' Stat., §2-3201 which provides in part that: "the party obtaining judgment shall not take an appeal after receiving any money paid or collected thereon." The appellant insisted that in receiving the money the clerk merely discharged a duty imposed upon him by law. In determining whether the clerk had received the money in the sense contemplated by the statute, this court observed that in receiving the money, issuing a receipt therefor, and crediting it on the margin of the judgment docket, the clerk did nothing more than he should and would have done in any case, and the court there found lacking the necessary element of voluntary acceptance of benefits by the judgment creditor.

By the judgment of the court below the commission is prevented from interfering or attempting to interfere with the rates and charges approved by the court, until such time as the commission shall have authorized proper, reasonable and non-confiscatory rates for appellee's services. In fixing rates the commission does not act "voluntarily." It is the commission's statutory duty to fix rates and it is by law charged with that responsibility. We reject the idea that by holding hearings for the purpose of establishing reasonable and non-confiscatory rates the commission has voluntarily recognized and acquiesced in the judgment from which it is now appealing. The judgment by its terms is to continue in effect until new rates are established. Therefore, if the commission cannot conduct hearings for the purpose of establishing new rates while the judgment is in force, without such action being deemed an acquiescence in the judgment,

it can never establish new rates and the appellee may continue to operate under the injunction indefinitely. Such a result would be repugnant to reason. We hold the commission did not by its action voluntarily recognize and acquiesce in the validity of the judgment.

Motion to dismiss appeal overruled.

Filed December 8, 1952.

## ON THE MERITS

FLANAGAN, J.—On May 31, 1951, the Public Service Commission of Indiana, in its cause numbered 22632, entered an order fixing certain rates to be charged by appellee, a public utility. On June 15, 1951, the appellee filed its complaint in the Marion Circuit Court, under the provisions of §54-429, Burns' 1951 Replacement, and under the general equity powers of that court, seeking to set aside that order. The above-mentioned section reads as follows:

> "Any person, firm, association, corporation, city, town or public utility adversely affected by any decision, ruling, order, determination, requirement or direction of the public service commission may commence an action in the circuit or superior court of any county in which that portion of the utility which is the subject-matter of the procedure before the public service commission operates or seeks to operate, against the commission to vacate or set aside or enjoin the enforcement of any such decision, ruling, order, determination, requirement or direction, on the ground that the same is insufficient, unreasonable, unlawful, or procured by fraud or other unlawful methods."

The complaint charged that the order was insufficient, unreasonable and unlawful, and was procured by unlawful means, and sought an injunction to prevent the Public Service Commission from enforcing that

order or interfering with its charging what it alleged to be reasonable rates until reasonable rates were finally legally determined.

On June 28, 1951, the Marion Circuit Court granted an injunction, and approved a schedule of reasonable rates *pendente lite*. That action, upon proper procedure, reached the attention of this court and was here approved. *State ex rel. Pub. Serv. Com.* v. *Marion C. Ct.* (1951), 230 Ind. 277, 100 N. E. 2d 888, 103 N. E. 2d 214.

After the granting of the temporary injunction, a hearing was held in the Marion Circuit Court, with the result that the court held that new and additional evidence had been introduced by the Indiana Bell Telephone Company, and certified that fact to the Public Service Commission of Indiana, pursuant to the provisions of §54-436, Burns' 1951 Replacement. This section reads as follows:

> "If, upon the trial of such action, evidence shall be introduced which is found by the court to be materially different from that offered upon the hearing before the commission, the court before proceeding to render judgment, unless the public service commission shall, in writing, waive the necessity, shall transmit a copy of such materially different evidence to the commission and shall stay further proceedings in said action for fifteen [15] days from the date of such transmission. Upon the receipt of such evidence the commission shall consider the same and may, in any manner, change its decision, ruling, order, determination, requirement or direction complained of in said action, and shall report its action thereon to said court within ten [10] days from the receipt of such evidence."

The order of transmission to the Public Service Commission was dated November 19, 1951. By order dated November 21, 1951, the Public Service Commission

rescinded the order in controversy, being that order dated May 31, 1951, in its cause numbered 22632, and ordered a supplementary hearing to be held November 30, 1951, provided there would be dismissal of the injunction matter in the Marion Circuit Court, pursuant to the provisions of §54-437, Burns' 1951 Replacement. This section reads as follows:

"If the commission shall so report that it has rescinded its decision, ruling, order, determination, requirement or direction complained of, the court shall thereupon dismiss the action; if the commission shall so report that it has otherwise changed its action the changed or amended decision, ruling, order, determination, requirement or direction shall take the place of the original decision, ruling, order, determination, requirement or direction complained of, and judgment shall be rendered thereon as though made by the commission in the first instance. If the original action of the commission complained of be not rescinded or changed by the commission, judgment shall be rendered upon such original decision, ruling, order, determination, requirement or direction."

However, instead of following the provisions of the statute above set forth, the Marion Circuit Court set this case for hearing upon the request for permanent injunction, held such hearing, and entered a permanent injunction approving a schedule of rates different from those approved on the temporary injunction, and enjoining the Public Service Commission from interfering until it shall "in the manner provided by law establish and authorize proper, reasonable, and non-confiscatory rates," etc.

The first question presented is whether the Marion Circuit Court had the power to approve a schedule of rates upon permanent injunction. We must answer that question in the negative. The Constitution of the State of Indiana provides:

"The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." Article 3, Section 1.

No exception is involved in this case.

It has long been recognized that the authority to fix rates for public utilities resides in the Legislature. *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 47 N. E. 525, 51 N. E. 80.

The administration of such regulations, under such laws as the Legislature in its wisdom adopts, belongs to the administrative department. *Pub. Ser. Com.* v. *Ind'p'ls Railways* (1947), 225 Ind. 30, 72 N. E. 2d 434.

The judicial branch of the government may only interfere whenever a judicial question is involved, as, for instance, in cases of fraudulent, abritrary, or capricious action by an administrative body. *Peden et al.* v. *Board of Review of Cass County* (1935), 208 Ind. 215, 195 N. E. 87; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399.

In the case of actions confiscatory of property, whether it be that of public utilities or others, this judicial power necessarily covers, even though an administrative decision is involved. *Pub. Ser. Com.* v. *Ind'p'ls Railways, supra; State ex rel. Pub. Serv. Com.* v. *Marion C. Ct., supra.*

But it must be noted that the *privilege* to so interfere includes the *duty* to make sure such interference is the very minimum necessary to judicial protection of the rights of the people. While we of the judiciary stoutly support our *reasons* for standing guard on behalf of the rights of our protector-

ate, we must not permit ourselves to find *excuses* for invading the province of those of other departments of government who equally protect our people.

Judge Bobbitt of this court, in the case of *State ex rel. Pub. Serv. Com. v. Marion C. Ct., supra,* clearly pointed out our proper limitation. Judge Emmert, in the same case, judicially careful, in a learned dissenting opinion, called strict attention to the possible danger. Judge Starr, in the case of *Pub. Ser. Com.* v. *Ind'p'ls Railways, supra,* specifically noted the same thing (p. 42 of 225 Ind., p. 439 of 72 N. E. 2d) :

> "The fact that the trial court, *on final hearing, could only set aside or enjoin the enforcement of the challenged order* of June 27, 1946, has nothing to do with whether or not a *temporary injunction* can be ordered *pendente lite.*" (Our emphasis.)

The law of restricted judicial interference seems well and properly settled.

We must next make clear the practical result of this decision. It is obvious that a *valid temporary* injunction cannot be merged into an *invalid permanent* injunction. Therefore the temporary injunction stands, and the decree entered on January 30, 1952, will be considered a part of the extension of powers in the temporary injunction and becomes a part thereof. The decree now in effect is the decree of the court entered on January 30, 1952.

This matter should be returned to the Public Service Commission, with instructions to consider the new evidence and fix proper rates. As we have stated, until this is done the provisions of the temporary injunction remain in effect. We have no doubt but that the Public Service Commission will do its part. Any complaint will be subject to proper judicial review.

When the statute, §54-437, Burns' 1951 Replacement, speaks of dismissal of the pending action, it refers, of course, only to the dismissal of that part of the action which involves the remedy afforded by the statute. It cannot refer to, limit, or restrain the equity powers of the court. The Marion Circuit Court retains jurisdiction to enforce the necessary features of its temporary injunction until its provisions have found completion.

Judgment reversed, with instructions for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 108 N. E. 2d 889, and 112 N. E. 2d 751.