BETTER TASTE POPCORN CO., INC. *v.* PETERS.

[No. 18,377. Filed October 23, 1953. Rehearing denied January 8, 1954. Transfer denied February 23, 1954.]

320

*O'Neill, Scott & Schrenker*, of Anderson, and *James P. Murphy*, of Fort Wayne, for appellants.

*Robert L. Shearer* and *John D. Staggenburg*, of Anderson, and *Melville E. Watson*, of Greenfield, for appellee.

CRUMPACKER, J.—On March 5, 1948, the appellant, a corporation, and the appellee, a farmer, entered into a written contract whereby the appellee undertook to plant 60 acres of his land to popcorn, cultivate and harvest the same and make delivery of the entire crop at the place of origin to the appellant upon its order. The appellant agreed to furnish the seed corn necessary to the undertaking for which the appellee promised to pay 75 cents per pound. If the popcorn so grown proved merchantable and "fit for safe cribbing" when delivery

was demanded the appellant agreed to pay the appellee $5.00 per hundred weight therefor.

Claiming to have grown 193,050 pounds of popcorn under the terms of this contract which was delivered to and accepted by the appellant and for which the appellant refused to pay, the appellee brought this suit to collect the purchase price plus interest for unreasonable delay in the payment thereof. The appellant defended on the theory that it rejected all the popcorn grown by the appellee because its excessive moisture content and infestation by weevil made it unmerchantable and "unfit for safe cribbing." That it took appellee's popcorn for storage only and held it upon his order. That subsequently the contract sued on was abandoned by the parties and a substitute contract entered into wherein the appellee acknowledged that the popcorn in the appellant's cribs was his property and there for storage purposes and authorized the appellant to sell it for him at $4.50 per hundred weight, to all of which the appellant agreed. In this connection we note that abandonment of the original contract and execution of a new one was not specially pleaded but upon trial of the case evidence bearing on the issue was introduced without objection and, although the instructions of the court are not in the record, we assume that such issue was submitted to the jury for determination. The appellant also sought, by way of cross-complaint, to recover the sale price of the seed corn it furnished the appellee and for which he agreed but failed to pay. The jury resolved these issues in favor of the appellee on his complaint and for the appellant on his cross-complaint and in doing so returned two verdicts which the appellant challenged by a motion for a *venire de novo* which was overruled. The propriety of such ruling, however, is not before us as we are constrained to consider it waived by the failure of the appellant to

mention it in the argument section of its brief. *Public Service Commission* v. *Indiana Bell Tel. Co.* (1952), 232 Ind. 332, 108 N. E. 2d 889; *Greenwood* v. *City of Washington* (1952), 230 Ind. 375, 102 N. E. 2d 642.

There are however, two questions before us. The first is the appellant's contention that there is no evidence tending to suport the appellee's theory that he delivered the popcorn in controversy and that the appellant accepted it in performance of the contract sued upon. In this connection the appellant argues that the undisputed evidence forces the conclusion that it rejected all popcorn grown by the appellee because it was "unfit for safe cribbing" due to infestation and excessive moisture content. That the appellee, with appellant's consent, thereupon stored the controversial crop in the appellant's cribs to be disposed of upon his own order. There is strong evidence tending to support this contention and the appellant's brief forcibly brings it to our attention. However, we cannot concern ourselves with the weight of evidence or where its preponderance lies. That question was for the jury to determine in the first instance and then for the trial court on the motion for a new trial.

The execution of the contract sued on is undisputed and acting under its terms the appellee planted, cultivated and harvested 60 acres of popcorn from seed furnished by the appellant. He stored the same in his own cribs awaiting the appellant's order to deliver. From this point on the evidence most favorable to the appellee indicates that in early January, 1949, the appellant, through its agent Robert Jack, notified the appellee it was ready to accept delivery. Jack furnished trucks upon which the corn was loaded and hauled to Emporia, a small town in Madison County, where it was weighed. It was then taken to the appellant's cribs and shoveled off the trucks onto a sorting table where

the appellant threw unacceptable corn back on the trucks and the remainder went onto elevators and was hoisted into the appellant's cribs. The trucks with rejected corn were again weighed at Emporia and the appellee was then given a receipt for delivery of corn the weight of which was determined by the difference between the weights before and after sorting. These weight receipts totaled 193,050 pounds and each contained the following statement: "Sold to Better Taste Popcorn Company. Bought of Jay Peters." Delivery in the above manner was completed about February 3, 1949, and subsequently during that year the appellee made frequent trips to appellant's office where he unsuccessfully sought payment or partial payment for his corn. There is also expert testimony that the popcorn tendered to the appellant in performance of the appellee's undertaking was "fit for safe cribbing" in January, 1949. This evidence, although strongly rebutted, is sufficient, in this court, to sustain the jury's verdict.

The appellant's second contention is that after the contract sued on was executed and partially performed by the appellee it became apparent to both parties that the popcorn involved, by reason of a wet season, was not fit for cribbing because of its excessive moisture content. That the appellant was possessed of modern and specially constructed cribs in which there was a possibility that the appellee's corn might dry out sufficiently to make it merchantable at some future date at a reduced price. The parties thereupon mutually rescinded the original contract and entered into a new one whereby the appellant undertook to store and dry out appellee's corn and sell it for him at $4.50 per hundred weight when and if it became merchantable. The execution of this second contract is admitted by the appellee and no fraud, deceit or coercion is charged in its execution. It is these facts which the appellant insists

forces the conclusion that a verdict based on the original contract is contrary to law. The argument runs thus: As a contract is the result of an agreement, so an agreement may put an end to a contract. Therefore a contract may be discharged by a new agreement the terms of which are so inconsistent with the first that they both cannot subsist together. There is much respectable authority for this rule within limitations. (See 17 C. J. S., Contracts, §§394, 395 and cases cited. See also *Commercial Acceptance Co.* v. *Walton* (1931), 93 Ind. App. 136, 176 N. E. 244).

However the substituted agreement, like all contracts, must be supported by a valid consideration. The general rule is stated thus in 12 Am. Jur., Contracts, §411: "The mutual agreement of the parties to a bilateral executory contract, before a breach thereof, to abrogate and discharge it and to substitute in its stead a new contract conferring new advantages or imposing new burdens on both constitutes a sufficient consideration to support the substituted contract." Where the original contract has been performed by one party the consent of the other party is insufficient consideration for an agreement replacing the original and in such cases some other consideration is necessary. *Renner* v. *Luchow* (Mo. App.), 280 S. W. 77. The author of the note in 42 A. L. R. 996 speaking of a broker's contract, says this: "The great majority of the cases . . . sustain the statement that where the contract is executed on the part of the broker, that is, where he has done everything which he was to do under the contract, any agreement by him whatever which materially affects his substantial rights under it so far as to impair their present value to him must be founded on some legal consideration or it is *nudum pactum*."

In the case before us the jury found that the appellee had performed the contract sued upon and was entitled

to receive payment at the rate of $5.00 per hundred weight for 193,050 pounds of popcorn he had grown and delivered under the terms thereof. By the substituted contract, upon which the appellant relies, he gave up that right and agreed to accept $4.50 per hundred weight if and when the appellant found a buyer at that price. We have searched the record and have not found a scintilla of evidence indicating that the substituted contract is supported by any consideration other than the inference that the original, being wholly inconsistent with the substitute, was abandoned by mutual consent. That is insufficient under the facts in this case and in our opinion the substituted contract must be regarded as *nudum pactum* and therefore constitutes no defense.

Judgment affirmed.

Achor, J., not participating.

NOTE.—Reported in 114 N. E. 2d 817.